JENKINS v STARKEY

Docket No. 78-3852. Submitted December 6, 1979, at Detroit.—Decided March 4, 1980.

Plaintiff James Jenkins, a Wayne County deputy sheriff, was injured in a shoot-out with members of the Detroit Police STRESS unit. Jenkins and his wife, JoAnn, brought an action against the defendants Virgil A. Starkey, James R. Harris and Ronald H. Martin, STRESS unit members. Prior to trial the Detroit Police Department and its commissioner were dismissed as parties. The Wayne Circuit Court, William Leo Cahalan, J., entered judgment on a verdict for plaintiffs. Defendants appeal. *Held:*

1. Defendants allege error in certain instructions to the jury but did not object to them at trial. The Court of Appeals will review a. trial court's instructions to the jury only upon a showing of manifest injustice where the instructions were not objected to at trial.

2. Defendants contend that the proper standard of care in determining negligence as to police use of deadly force is a subjective one. The standard of care which applies in a negligence action involving a police officer is to compare the officer's conduct to that care which a reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances; this standard applies to the negligent use of deadly force.

3. Defendants object to the court's refusal to instruct the jury concerning contributory negligence. A trial court is not obli-

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 891.

[2] 57 Am Jur 2d, Negligence §§ 66 *et seq.,* 115-118.

Municipal liability for personal injuries resulting from police officer's use of excessive force in performance of duty. 88 ALR2d 1330.

Personal liability of policeman, sheriff, or other peace officer, or bond, for negligently causing personal injury or death. 60 ALR2d 873.

[3] 75 Am Jur 2d, Trial § 590.

[4] 5 Am Jur 2d, Appeal and Error § 601 *et seq.*

gated to give requested instructions which are not warranted by the facts. The facts did not warrant such an instruction.

4. Defendants claim error in the trial court's refusal to admit certain evidence. However, because they failed to object in the trial court to the admission of the evidence, they have failed to preserve the issue for review.

Affirmed.

1. APPEAL AND ERROR — INSTRUCTIONS TO JURY — MANIFEST INJUSTICE.

The Court of Appeals will review a trial court's instructions to the jury only upon a showing of manifest injustice where the instructions were not objected to at trial.

2. NEGLIGENCE — STANDARD OF CARE — POLICE OFFICERS — REASONABLY PRUDENT MAN — LIKE CIRCUMSTANCES.

The standard of care which applies in a negligence action involving a police officer is to compare the officer's conduct to that care which a reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances; this standard applies to the negligent use of deadly force.

3. TRIAL — INSTRUCTIONS TO JURY.

A trial court is not obligated to give requested instructions which are not warranted by the facts.

4. APPEAL AND ERROR — PRESERVING QUESTION — EVIDENCE.

The issue of a trial judge's ruling on the admissibility of evidence is not preserved for appellate review without an objection to the ruling.

*Zeff & Zeff* (by *Michael T. Materna* and *Melvin L. Berris*), for plaintiffs.

*Roger E. Craig*, Corporation Counsel, and *Thomas H. Gallagher*, Assistant Corporation Counsel, for defendants.

Before: MacKenzie, P.J., and V. J. Brennan and D. F. Walsh, JJ.

V. J. Brennan, J. This is a negligence action which arose out of a March 9, 1972, "shoot-out" which

occurred between several Wayne County Sheriff's deputies, plaintiff James Jenkins among them, and defendants Virgil A. Starkey, James R. Harris and Ronald H. Martin, then members of the Detroit Police Department's STRESS unit.

As a result of this "shoot-out", plaintiff James Jenkins and his wife, JoAnn, filed a complaint against the Detroit Police Department, the Detroit Police Commissioner and Detroit Police Officers Starkey, Martin and Harris. They alleged that the individual officers without warning or cause fired upon plaintiff James Jenkins causing substantial injuries. Plaintiff James Jenkins sought $3,000,000 in damages while plaintiff JoAnn Jenkins sought $1,000,000 for loss of love, use, care and consortium of her husband. On October 5, 1972, the Detroit Police Department and the Detroit Police Commissioner were dismissed as parties. The matter proceeded to trial with the jury returning a verdict of $1,500,000 in favor of James Jenkins and $150,000 in favor of plaintiff JoAnn Jenkins.

There is considerable disagreement as to what occurred on the night in question. James Jenkins, then a Wayne County Sheriff's deputy, testified that on March 8, 1972, between 11:30 p.m. and midnight, he arrived in the vicinity of 3210 Rochester, Detroit. Parking his car, he took both his weapons and headed down the street towards the apartment of Wayne County Deputy Sheriff Aaron Vincent. Jenkins denied carrying these weapons in his hands. After knocking and being told to enter, he walked into Vincent's apartment. While standing with his back to the door, someone entered and hollered something and shooting broke out before Jenkins could turn around. Jenkins fired three times at a man he saw on the balcony, unaware that this man who was firing at him was a police

officer. Along with the other occupants of the apartment, he retreated into the bedroom. In response to shouts of "come on out", Jenkins and the other men in the bedroom started yelling that they were Wayne County Deputies. When a voice demanded "[s]how some I.D.", guns and badges were thrown out. Then, in response to the command, "Okay. Come on out with your hands up", Jenkins approached the door holding his I.D. folder with badge in front of him. As soon as he got to the bedroom door, he was shot in the temple.

Wayne County Sheriff's Department Deputies Aaron Vincent, Henry Henderson, Henry Duvall, David Edward Davis and civilian Richard Sain testified they were playing cards in Vincent's apartment the night of the incident. Vincent, Davis and Sain testified at trial and essentially corroborated Jenkins' testimony.

On the other hand, defendant Ronald H. Martin, then a member of the Detroit Police Department's STRESS Unit, testified that shortly before midnight on March 8, 1972, he noticed Jenkins holding a gun in his hand in the vicinity of 3210 Rochester, Detroit. Aroused solely by the gun, Martin and defendant James R. Harris, also a member of STRESS, ran after Jenkins and saw him enter Vincent's apartment. After opening the screen door, Martin shoved his gun and badge through the doorway, and heard Officer Harris identify himself as a police officer. Gunfire quickly followed. After the initial shooting, someone's arm came out of the doorway and fired at Martin twice. Martin returned this gunfire and Officer Starkey ascended the stairway. Believing that Harris had been shot and that the apartment's occupants were running to the back of the building, Martin

and Starkey entered the apartment. Another round was fired from the bedroom following which Martin fired 17 or 18 rounds. By this time the three policemen had entered the apartment. Officer Martin yelled, "Detroit Police Officers" and the survivors in the bedroom shouted "We're police, too, we're deputies", threw out their guns and badges, and exited the bedroom. Martin testified that he found Jenkins in the bedroom shot in the head, along with Deputy Henderson who had been shot to death.

Officer Martin's testimony was corroborated by that of Officers Harris and Starkey.

Following a verdict in favor of plaintiff, defendants moved for a new trial, judgment n.o.v. or *remittitur.* The motion was denied in an order dated September 5, 1978.

Although defendants raise five issues on appeal, only the first of the alleged instructional errors, regarding the appropriate standard of care in the use of deadly force, requires extended discussion.

At the outset we note that defendants did not object at trial to those instructions which they now argue on appeal to be erroneous. Where no objections are made at the trial court level, appellate review is precluded absent a showing of manifest injustice. *Conel Development, Inc v River Rouge Savings Bank,* 84 Mich App 415, 425; 269 NW2d 621 (1978). *Earle v Colonial Theatre Co,* 82 Mich App 54, 57; 266 NW2d 466 (1978), *lv den* 403 Mich 816 (1978), GCR 1963, 516.2. Our review indicates no manifest injustice.

The trial judge gave the following instruction regarding defendants' use of deadly force and the standard of care to be used in determining if the police officers were negligent:

"Now, the law in the State of Michigan respecting an arrest made by a peace officer, is as follows.

"Any peace officer may without a warrant arrest a person for the commission of any felony or misdemeanor committed in his presence or when he has reasonable cause to believe that a felony has been committed, and reasonable cause to believe that such person has committed it.

"In effecting a lawful arrest for a misdemeanor, a peace officer may use only that degree of force reasonably necessary to effect the arrest, short of deadly force. In effecting a lawful arrest for a felony, a peace officer may use that degree of force reasonably necessary to effect that arrest including deadly force.

"A peace officer may use deadly force in defense of his own life, in defense of another, or in pursuit of a fleeing felon.

"Now, if the police officers make an arrest for a misdemeanor only, the arrest must be reasonably immediate after the misdemeanor was observed. A police officer is not liable for injuries inflicted by him in the use of reasonably necessary force.

"In reviewing the question of reasonable force and of whether the officers had probable cause to believe that a felony had been committed, *you must determine whether or not a man of reasonable prudence and caution would have so acted or so believed under the facts which you find the officers were aware of or reasonably should have been aware of at that time; and under the then existing circumstances.*" (Emphasis added.)

Although one of the several instructions requested by defendants was virtually identical to that given by the trial judge, defendants now claim error. Specifically, they contend that the proper standard of care in determining negligence as to police use of deadly force is a subjective one. Thus they argue that the trial judge should have instructed that the use of deadly force is within

the officer's professional discretion. We cannot agree.

The specific issue raised here has not been previously addressed by our courts. However, the Court has addressed the standard of care used in determining a police officer's negligence. In *McKay v Hargis,* 351 Mich 409, 418; 88 NW2d 456 (1958), a case involving a suit by a police officer against the individual he was pursuing in an automobile chase, the Michigan Supreme Court stated:

> "We know of no better standard by which to determine a claim of negligence on the part of a police officer than by comparing his conduct, as this circuit judge suggested, to 'that care which a reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances.' "

And in *Cole v Rife,* 77 Mich App 545, 549-552; 258 NW2d 555 (1977), a panel of this Court, relying on *McKay, supra,* concluded that the "reasonably prudent man" standard applies where a police officer is the defendant in a negligence action.

In view of both *McKay* and *Cole, supra,* we remain unpersuaded that a different standard of care applies where, as in this case, the claim is negligent use of deadly force. The drastic, oftentimes fatal consequences of the negligent use of deadly force further compels us to reject the purely subjective standard which defendants advocate.[1] We believe that such a standard could cause

---

[1] Defendants cite no cases which suggest that a subjective standard under these circumstances exists in Michigan. They do, however, provide us with a litany of cases, both Federal, *Daly v Pedersen,* 278 F Supp 88 (D Minn, 1967), *Conklin v Barfield,* 334 F Supp 475 (WD Mo, 1971), and state, *Skinner v Brooks,* 74 Ohio App 228; 58 NE2d 697 (1944), *Perry v Gibson,* 247 NC 212; 100 SE2d 341 (1957), *In re Removal of Pickering,* 25 Ohio App 2d 58; 266 NE2d 248 (1970), *Manson v Wabash R Co,* 338 SW2d 54 (Mo, 1960), and *Schell v Collis,* 83 NW2d 422 (ND, 1957), in support of their contention that the

fear of, and reduce respect for, the police, in addition to leading to abuses by unscrupulous officers.

The traditional tort standard of negligence, "reasonably prudent man under like circumstances" governs in determining the standard of care applicable under the factual circumstances of the instant case. This standard allows the fact-finder to determine that some factual circumstances reasonably require greater or lesser diligence than do other circumstances in order to constitute reasonable or due care. *Felgner v Anderson,* 375 Mich 23, 30; 133 NW2d 136 (1965). The trial judge's charge adequately and fairly presented the law applicable to the facts in evidence. Thus this allegation of error is without merit.

The remaining two alleged instructional errors do not require extensive discussion. The trial judge's failure to define "felony", "misdemeanor", and "barricaded gunman" was not error where the felony-misdemeanor distinction was adequately explained at trial, a witness read the jury the definition of "barricaded" from several dictionaries, and the jury did not request the definition of these terms.

Similarly, the trial judge's decision not to give defendants' requested instruction on contributory negligence was not erroneous. A court is not obligated to give requested instructions which are not warranted by the facts. *Aamco Automatic Transmissions, Inc v Motor Trans, Inc,* 45 Mich App 539, 543; 207 NW2d 156 (1973), *lv den* 389 Mich 817 (1973). Contributory negligence was not an issue presented by the proofs. Rather, defendants contended that Jenkins intentionally turned on them

subjective standard is the correct one. Our reading of these cases, however, does not coincide with defendants' interpretation of them.

and fired knowing they were police officers. The officers' theory of the case was self-defense. Hence the trial judge properly refused to give the requested instruction.

Defendants also claim they were prejudiced when the trial judge accepted plaintiffs' theory of the case one day before the jury was instructed, in contravention of Wayne County Circuit Court Rule 7.6. Specifically, defendants argue that the "barricaded gunman" portion of plaintiff' theory was both untimely and not supported by the evidence. Our review of the trial transcript indicates that the "barricaded gunman" issue had been raised several times during trial, was supported by the evidence, injected no new facts and did not prejudice defendants. Thus the trial judge properly instructed the jury on this element of plaintiffs' theory. *Hansen v Batchelder,* 14 Mich App 627, 633; 165 NW2d 886 (1968).

Lastly, defendants complain that the trial court erred in refusing to allow the jury to examine the record of the proceedings of the Board of Inquiry which initially investigated this matter. Defendants did not object to the trial court's ruling on the report's admissibility, thus failing to preserve this alleged error for appellate review. *Metcalf v Waterbury,* 60 Mich App 553, 557; 231 NW2d 437 (1975), *lv den* 394 Mich 821 (1975), *Hirdes v Selvig,* 369 Mich 173, 178-179; 119 NW2d 537 (1963).

Affirmed.