## WERNER v HARTFELDER

Docket No. 52797. Submitted January 7, 1982, at Detroit.—Decided
March 3, 1982. Leave to appeal applied for.

David R. Werner was injured as a result of being shot twice while
fleeing from police officer Henry Hartfelder. Werner had stolen
a CB radio from an automobile parked in a restaurant parking
lot. Werner filed suit against Hartfelder in Oakland Circuit
Court alleging that Hartfelder was negligent in shooting him
and that Hartfelder was not justified in using deadly force to
prevent his escape. The court, John N. O'Brien, J., entered
judgment of no cause of action for Hartfelder. The plaintiff
appeals. *Held:*

In effecting a lawful arrest for a felony, a peace officer may
use that degree of force reasonably necessary to effect that
arrest, including deadly force. A peace officer may use deadly
force in defense of his own life, in defense of another or in
pursuit of a fleeing felon. The trial court applied the appropri-
ate standard of "a reasonable person under like circumstances"
to the behavior of the defendant. The trial court's findings will
not be disturbed at the appellate level unless they clearly
preponderate in the opposite direction. The record clearly
supports the trial court's findings.

Affirmed.

T. M. BURNS, J., dissented. While he realizes that Michigan
impliedly recognizes the right of a police officer to use deadly
force to prevent the escape of a felon who has committed a
crime against property only, he believes that rule was never
intended to apply to arrests of persons who have committed
minor property crimes. He believes that the rule, while once
based on common sense is now applied senselessly. He would
reverse and remand for a new trial.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Arrest § 84.
 Peace officer's civil liability for death or personal injuries caused by
  intentional force in arresting misdemeanant. 83 ALR3d 238.
[2] 5 Am Jur 2d, Arrest § 114.
[3] 5 Am Jur 2d, Appeal and Error § 821.
[4] 5 Am Jur 2d, Arrest § 84.

Opinion of the Court

1. Arrest — Deadly Force — Fleeing Felons.

Michigan follows the common-law rule with respect to the use of deadly force in effecting the arrest of a fleeing felon; in effecting a lawful arrest for a felony, a peace officer may use that degree of force reasonably necessary to effect that arrest including deadly force; a peace office may use deadly force in defense of another, or in pursuit of a fleeing felon.

2. Public Officers — Police Officers — Standard of Care — Arrest of Fleeing Felon.

A police officer should be held to the standard of conduct which a reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances in an action charging the peace officer with negligence in effecting the arrest of a fleeing felon.

3. Appeal — Trier of Fact — Findings of Fact.

An appellate court should not substitute its judgment for that of the trier of fact on questions of fact unless the facts clearly preponderate in the opposite direction.

Dissent by T. M. Burns, J.

4. Arrest — Deadly Force — Fleeing Felons.

*Michigan impliedly recognizes the right of a police officer to use deadly force to prevent the escape of a felon who has committed a crime against property only; however, this rule was never intended to apply to arrests of persons who have committed minor property crimes.*

*Bernard P. Paige, P.C.,* for plaintiff.

*Dice, Sweeney, Sullivan & Feikens, P.C.,* for defendant.

Before: Bashara, P.J., and T. M. Burns and Allen, JJ.

Allen, J. Plaintiff filed a negligence action against defendant, a Troy police officer, for injuries sustained as a result of defendant's allegedly negligent use of deadly force to prevent plaintiff's es-

cape as a suspected fleeing felon. Following a three-day trial without a jury, the trial court entered a judgment of no cause of action on July 16, 1980. From such judgment, plaintiff appeals of right. The principal issue raised on appeal has never been directly addressed in Michigan: may a police officer use deadly force when necessary to prevent the escape of a fleeing felon.

On September 15, 1976, Officer Hartfelder and three other officers of the Troy Police Department were assigned to watch for persons breaking and entering parked vehicles in the Oakland Mall. For this purpose, a decoy vehicle, a pick-up truck with two CB antennas, was stationed in the mall and the officers took positions a short distance away. About 5:00 or 5:30 p.m., Hartfelder observed the plaintiff approach the decoy vehicle, push open the vent window, and stick his hand inside the vehicle. When another vehicle approached, plaintiff withdrew his hand and walked away. The officers kept plaintiff under close surveillance and observed him enter the parking lot of the Steak & Ale Restaurant across Fourteen Mile Road in the City of Madison Heights. The Madison Heights Police Department was contacted, and Hartfelder followed plaintiff on foot.

Hartfelder then observed plaintiff enter a parked car and soon emerge with something under his coat. From another officer, Hartfelder received a radio transmission that the suspect had a CB radio. Hartfelder then approached plaintiff. When 20 feet away, he yelled that he was a police officer and for the plaintiff to halt. Plaintiff began running across Fourteen Mile Road, at which time Hartfelder fired his .357 magnum twice. The first shot struck plaintiff in the left shoulder. The second shot struck him in the left leg, causing plaintiff to fall down in the middle of Fourteen

Mile Road. Hartfelder's testimony was basically supported by testimony of officers of the Troy and Madison Heights police departments.

At trial, plaintiff testified that he intended to steal a CB radio, and in fact, had stolen such a radio and was headed back to his car when he heard someone yell "drop it", but did not know it was the police. He claimed that he was not trying to escape, but was scared. He asserted that while his leg had healed nicely, his left arm was paralyzed from the elbow down and that he could not move his left fingers at all.

Counsel for plaintiff concedes that, at common law, deadly force could be used by a police officer, if necessary, to apprehend a suspected fleeing felon but argues that this rule is now outmoded. In an excellent and comprehensive brief reviewing the subject matter in other jurisdictions, plaintiff contends that the modern trend is toward a rule which allows deadly force to be used to apprehend a fleeing felon only where the underlying felony involves force against a person rather than use of force to acquire property. Model Penal Code, § 3.07;[1] *Mattis v Schnarr*, 547 F2d 1007, 1114-1115 (CA 8, 1976). We quote from plaintiff's brief:

"The President's Commission on Law Enforcement and Administration of Justice, the National Commission on Reform of Federal Criminal Laws, and legal scholars whose writings span the last five decades generally support a rule which would limit the use of deadly force by police officers to those circumstances where the use of force is essential to the protection of

[1] Pursuant to the Model Penal Code, § 3.07, a police officer may use deadly force only when the arrest is for a felony which the officer believes "involved conduct including the use or threatened use of deadly force", or which the officer believes demonstrates "substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed."

human life and bodily security or where violence was
used in committing the felony.

* * *

"It is plaintiff's contention that a police officer may
not use deadly force for the sole purpose of effecting the
arrest of a fleeing felon where the underlying offense
involves *only* threat to property and does not involve
use or threatened use of force against persons. In
Michigan there are no statutes which address this issue.
The Michigan case law only suggests that the force
used must be reasonable under the circumstances.
*There are no cases which hold that as a matter of law
deadly force may be used to effect the arrest of a fleeing
felon.* Yet, in the instant case, the trial court held that
'it is the law in Michigan (that) an officer can shoot at a
fleeing felon and that he is justified in using what has
been termed as deadly force.' It is plaintiff's contention
that the trial court is wrong. The law in Michigan does
not and should not permit an officer to use deadly force
to effect the arrest of a fleeing felon when the underly-
ing felony involves only threat to property and when
there is no use or threatened use of force against
persons."

We are not persuaded for three reasons. *First,*
Michigan has not adopted the Model Penal Code.
Thus, to this extent, plaintiff's claim is more prop-
erly directed to the Legislature. *Second,* only a
small minority of states have adopted the "Forci-
ble Felony Rule", or "Model Penal Code Rule".
Thirty-six states have adopted the common-law
rule. Twelve have done so by judicial construction
and 24 by codification of the common law. Com-
ment, *Deadly Force to Arrest: Triggering Constitu-
tional Review,* 2 Harvard Civil Rights-Civil Liber-
ties L Rev 361 (1976). See, also, 83 ALR3d 174, § 2,
p 178. *Third,* while the question of whether a
police officer may use deadly force to prevent the
escape of a fleeing felon has not been directly
addressed in this state, decisions of the Supreme

Court and this Court impliedly answer the question in the affirmative.

In *People v Gonsler,* 251 Mich 443, 446; 232 NW 365 (1930), the Supreme Court approved the following jury instruction given by the trial court:

"Both officers and private persons seeking to prevent a felon's escape must exercise reasonable care to prevent the escape of the felon without doing personal violence, and it is only where killing him is necessary to prevent this escape, that killing is justified."

In *People v Whitty,* 96 Mich App 403; 292 NW2d 214 (1980), this Court addressed the issue of whether a *private citizen* may lawfully use deadly force in effecting an otherwise valid arrest of a felon. After finding that the question was not controlled by statute but by common law, this Court said:

"Under the common law, the use of deadly force in making an arrest can be divided into two categories; the use of deadly force when the person making the arrest is met with force from the person who is to be arrested, and *the use of deadly force when necessary to prevent the person who is to be arrested from fleeing.* * * *

"The second is more problematic, and has sparked the most controversy. Pearson, *The Right to Kill in Making Arrests,* 28 Mich L Rev 957 (1930)." (Emphasis supplied.) 96 Mich App 403, 411.

This Court went on to say that under the above rule, a distinction was made between private persons and police officers, and the latter were justified in using deadly force when there was a rea-

sonable belief that a felony had been committed and that the person against whom the force was used had committed the felony. *Whitty, supra,* 411-412.

In *Jenkins v Starkey,* 95 Mich App 685; 291 NW2d 170 (1980), (a civil action brought against a police officer for negligent use of deadly force in effecting an arrest, where no attempt to escape was alleged), this Court approved the following jury instruction:

"Now, the law in the State of Michigan respecting an arrest made by a peace officer, is as follows * * *

*"In effecting a lawful arrest for a felony, a peace officer may use that degree of force reasonably necessary to effect that arrest including deadly force.*

*"A peace officer may use deadly force in defense of his own life, in defense of another, or in pursuit of a fleeing felon."* (Emphasis supplied.) 95 Mich App 685, 690.

We are persuaded by these cases that Michigan follows the common-law rule with respect to the use of deadly force in effecting the arrest of a fleeing felon. As noted earlier, this is the rule followed in most states.

The second issue raised on appeal is whether the trial court applied an improper standard of care in deciding whether defendant police officer was negligent in using deadly force. Plaintiff argues that the proper standard of care to which a police officer must be held in such circumstances is that care which a reasonably prudent person would exercise in the discharge of official duties of like nature under the circumstances, but this was not

the standard the trial court used in this case.[2] Defendant contends that, contrary to plaintiff's assertion, the trial court did apply the reasonably-prudent-person standard.

. In *Jenkins v Starkey, supra,* this Court reiterated the proper standard of care to be applied in a negligence action against a police officer. Quoting *McKay v Hargis,* 351 Mich 409, 418; 88 NW2d 456 (1958), the Court stated:

"We know of no better standard by which to determine a claim of negligence on the part of a police officer than by comparing his conduct, as this circuit judge suggested, to 'that care which a reasonably prudent man would exercise in the discharge of official duties of like nature under like circumstances.' "

Since this is the proper standard to be applied in the instant case, it remains to be determined whether this standard was in fact applied by the trial court.

In his opinion delivered verbally from the bench and reported in the transcript, the trial judge found as a matter of fact that it was reasonable for the officer to believe that a felony had been committed by the plaintiff, that plaintiff was attempting to escape, and that plaintiff would have escaped had he not been stopped. The trial court further found that defendant identified himself as a police officer and ordered plaintiff to stop, but plaintiff did not do so. The court then said:

"I think it reasonably appeared to the officer that the

---

[2] "In essence the trial court limited its inquiry to whether it reasonably appeared that plaintiff had committed a felony and whether it reasonably appeared that he was about to escape. * * * The issue is not whether a reasonably prudent officer would have believed plaintiff was about to escape arrest. The issue is whether a reasonably prudent officer would have shot plaintiff at all under the circumstances."

plaintiff was not heading toward his car, but given the shopping crowd and the traffic, that he was indeed going to effectuate an escape if he got through the Fourteen Mile traffic. *It's my conclusion that the defendant acted as a reasonably prudent man, given the necessity to discharge his official duties under the circumstances that were then existing."* (Emphasis supplied.)

Based on the above, we conclude that the trial court did in fact apply the test of a "reasonable person under like circumstances". Application of that standard and determination of the facts is for the trial court. The trial court's findings will not be disturbed at the appellate level unless they clearly preponderate in the opposite direction. *Roebuck v Mecosta County Road Comm,* 59 Mich App 128; 229 NW2d 343 (1975). The record clearly supports the trial court's findings.

Affirmed. Costs to defendant.

BASHARA, P.J., concurred.

T. M. BURNS, J. *(dissenting).* Respectfully, I dissent.

The majority opinion correctly holds that the case law of this state impliedly recognizes the right of a police officer to use deadly force to prevent the escape of a felon who has committed a crime against property only.

In *People v Gonsler,* 251 Mich 443; 232 NW 365 (1930), the decedent was attempting to steal a portion of the defendant's illegal moonshine whiskey when he was shot by the defendant. The Court noted that, according to the decedent's dying declaration, "The defense of life or limb or of defendant's habitation was not involved * * *". *Id.,* 445.

Likewise, in this Court's recent opinion in *People v Whitty,* 96 Mich App 403; 292 NW2d 214 (1980), the defendant claimed that he killed the decedent while attempting to arrest him for the earlier robbery of his store.

The right of a police officer to use deadly force to effectuate the arrest of a fleeing felon is probably more persuasive in view of the fact that both of these cases involved the use of deadly force by a person who was not a police officer. Nonetheless, the precise question before us here, whether deadly force should be permitted when the escaping felon has committed only a minor crime against property, was not addressed by either of those cases.

The common-law rule relied upon by the majority opinion was recognized by this Court in *Whitty* as "developed in an era when the large majority of felonies were punishable by death, so that the killing of a fleeing felon tended only to hasten the ultimate result". 96 Mich App 403, 415. As early as the late 19th century, this rationale for the common-law rule was questioned in *United States v Clark,* 31 F 710, 713 (ED Mich, 1887):

> "I doubt, however, whether this law would be strictly applicable at the present day. Suppose, for example, a person were arrested for petit larceny, which is a felony at the common law, might an officer under any circumstances be justified in killing him? I think not. The punishment is altogether too disproportioned to the magnitude of the offense."

In the present case, defendant's actions violated the statute defining the offense of larceny from a motor vehicle, a felony:

> "Any person who shall commit the offense of larceny

by stealing or unlawfully removing or taking any wheel, tire, radio, heater or clock in or on any motor vehicle, house trailer, trailer or semi-trailer, shall be guilty of a felony, punishable by a fine not to exceed $1,000.00, or by imprisonment in the state prison not more than 5 years.

"Any person who shall enter or break into any motor vehicle, house trailer, trailer or semi-trailer, for the purpose of stealing or unlawfully removing therefrom any goods, chattels or property of the value of not less than $5.00, or who shall break or enter into any motor vehicle, house trailer, trailer or semi-trailer, for the purpose of stealing or unlawfully removing therefrom any goods, chattels or property regardless of the value thereof if in so doing such person breaks, tears, cuts or otherwise damages any part of such motor vehicle, house trailer, trailer or semi-trailer, shall be guilty of a felony, punishable by a fine not to exceed $1,000.00, or by imprisonment in the state prison not more than 5 years." MCL 500.356a; MSA 28.588(1).

The trivial nature of the great number of crimes covered under this statute shows how unwise it is to rely on the common law in this case. As was noted by a Pennsylvania court in *Commonwealth v Chermansky*, 430 Pa 170; 242 A2d 237, 240 (1968), in a case analogous to the one before us:

"The common law principle that a killing necessary to prevent the escape of a felon is justifiable developed at a time when the distinction between felony and misdemeanor was very different than it is today. Statutory expansion of the class of felonies has made the common law rule manifestly inadequate for modern law. Hence, the need for a change or limitation in the rule is indicated." (Footnotes omitted.)

Continuing, the *Chermansky* court developed the following rule:

"We therefore hold that from this date forward the

use of deadly force by a private person in order to prevent the escape of one who has committed a felony or has joined or assisted in the commission of a felony is justified only if the felony committed is treason, murder, voluntary manslaughter, mayhem, arson, robbery, common law rape, common law burglary, kidnapping, assault with intent to murder, rape or rob, or a felony which normally causes or threatens death or great bodily harm." (Footnote omitted.)

This rule reflects a reasoned approach to this problem. Why shouldn't a person who is attempting to evade arrest after stealing an article worth at least $5 from an automobile be shot by the police? Simply stated, the reason is that the magnitude of the crime does not warrant the use of deadly force. The Pennsylvania courts correctly limit the use of deadly force to those situations where the fleeing felon has committed or threatens a significant act of violence involving great bodily harm.

By not paying sufficient deference to the change that the concept of felony has undergone since the common-law rule permitting use of deadly force against escaping felons was formulated, the majority does not do justice to that rule. That rule was never intended to apply to arrests of persons who have committed minor property crimes. Thus, a rule that was once based upon the common sense of its time is now applied senselessly.

I would reverse and remand for a new trial.