PEOPLE v DALTON

Docket No. 85752. Submitted June 3, 1986, at Grand Rapids. Decided
    October 21, 1986.

Jeffrey Dalton was convicted of resisting a police officer, following
    a jury trial in Montcalm Circuit Court, James L. Banks, J. The
    proofs established that defendant, in violation of a court order,
    came to the house of his wife in the City of Belding, threatened
    his wife, produced a handgun, and entered the house by shoot-
    ing off certain doorknobs. Defendant then left in a truck. The
    City of Greenville police, being apprised of the events in Beld-
    ing, located the truck and ascertained that the defendant was
    in a house owned by defendant's sister and brother-in-law. The
    house was surrounded, and the police ordered the occupants to
    come out. Defendant's brother-in-law eventually came out and
    asked the police to leave. The police, instead, entered the house
    and arrested defendant, after having to physically subdue him.
    Defendant moved to have the charges dismissed on the basis
    that his arrest was illegal. The motion was denied. Following
    his conviction, defendant retained his trial counsel as appellate
    counsel. Counsel allegedly informed defendant of the possible
    conflict of interest of having him as appellate counsel because
    of his inability to effectively argue a claim of ineffective assis-
    tance of counsel, however, when counsel sought to withdraw, he
    informed the trial court only that defendant lacked funds to
    pursue the appeal and did not inform the trial court of any
    potential conflict of interest when the court appointed him as
    appellate counsel. Defendant appealed.

The Court of Appeals held:

    1. Since defendant had no reasonable expectation of privacy

REFERENCES

Am Jur 2d, Arrest §§ 69, 94, 116.
Am Jur 2d, Criminal Law §§ 732 et seq., 785, 967 et seq.
Am Jur 2d, Searches and Seizures §§ 1 et seq.
Am Jur 2d, Trial §§ 91 et seq.
Modern status of rule relating to jurisdiction of state court to try
    criminal defendant brought within jurisdiction illegally or as a
    result of fraud or mistake. 25 ALR4th 157.
See also the annotations in the Index to Annotations under Attor-
    ney or Assistance of Attorney; Privacy; Resisting Arrest.

in the premises at which he was arrested, defendant lacked standing to claim that entry of the house without a warrant was violative of the constitutional right to be free from unreasonable searches and seizures. In any event, even if the arrest was constitutionally invalid, the sole remedy is suppression of evidence secured pursuant to the unlawful arrest, not automatic dismissal of all charges.

2. The charge to the jury was adequate with respect to the element of the lawfulness of the arrest. Under these circumstances there was no need to charge the jury on exigent circumstances.

3. The record fails to support the claim that the trial court failed to maintain an impartial attitude.

4. The record fails to support the claim that trial counsel failed to render effective assistance of counsel.

5. The failure to apprise the trial court of the possibility that appointment of trial counsel as appellate counsel would jeopardize the presentation of the ineffective assistance of counsel issue acts to waive from appellate consideration the question of the propriety of the appointment.

Affirmed.

M. G. Hᴀʀʀɪsᴏɴ, J., concurred. He would hold however that the ineffective assistance of counsel argument should be decided under the recent standard enunciated by the United States Supreme Court even if the claim is based on the Michigan Constitution.

Oᴘɪɴɪᴏɴ ᴏғ ᴛʜᴇ Cᴏᴜʀᴛ

1. Sᴇᴀʀᴄʜᴇs ᴀɴᴅ Sᴇɪᴢᴜʀᴇs — Sᴛᴀɴᴅɪɴɢ — Rᴇᴀsᴏɴᴀʙʟᴇ Exᴘᴇᴄᴛᴀᴛɪᴏɴ ᴏғ Pʀɪᴠᴀᴄʏ.

A court in determining whether a defendant was subjected to a constitutionally prohibited search and seizure must decide, based on a totality of the circumstances, whether the defendant had a reasonable expectation of privacy in the object of the search and seizure; normally, where a defendant is arrested in the home of a third party, he will not have a reasonable expectation of privacy in the premises; the fact that the entry may have violated a protected right of the third-party home-owner has no effect upon any criminal proceeding against the defendant (Const 1963, art 1, § 11).

2. Cʀɪᴍɪɴᴀʟ Lᴀᴡ — Iɴᴠᴀʟɪᴅ Aʀʀᴇsᴛs.

The invalidity of an arrest does not deprive a court of jurisdiction to try a defendant; rather, the sole remedy available to a

defendant following an illegal arrest is the suppression of evidence obtained as a result of the illegal arrest.

3. CRIMINAL LAW — RESISTING ARREST — LAWFUL ARREST.

The lawfulness of the arrest is an element of the offense of resisting arrest; since it is an element of the crime, the lawfulness of the arrest is a question of fact for the trier of fact (MCL 750.479; MSA 28.747).

4. TRIAL — JUDICIAL IMPARTIALITY — JUDICIAL COMMENT.

A judge pierces the veil of judicial impartiality so as to require reversal where the judge's comments at trial are of such a nature as to unduly influence the jury and thereby deprive the defendant of his right to a fair trial.

5. CRIMINAL LAW — APPEAL — APPOINTED COUNSEL — CONFLICT OF INTEREST — ASSISTANCE OF COUNSEL — PRESERVING QUESTION.

Appointed counsel for a criminal defendant who believes that there may be some conflict of interest created by his appointment as appellate counsel should raise the question of the purported conflict of interest before the trial court rather than raising it for the first time on appeal.

CONCURRENCE BY M. G. HARRISON, J.

6. CRIMINAL LAW — APPEAL — ASSISTANCE OF COUNSEL.

*The right of a criminal defendant to effective assistance of counsel under the Michigan Constitution is coextensive with that same right afforded by the United States Constitution where the language in the two constitutions is nearly identical and there is no indication that the Michigan voters intended that the Michigan Constitution's provision be other than coextensive with the United States Constitution's provision; accordingly, the standard of reviewing a claim of ineffective assistance of counsel enunciated by the United States Supreme Court is the proper standard to be applied whether the claim is brought under the United States Constitution or the Michigan Constitution (US Const, Am VI; Const 1963, art 1, § 20).*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Bruce E. Basom,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

*John F. Walsh,* for defendant.

Before: Sullivan, P.J., and R. M. Maher and
M. G. Harrison,* JJ.

Sullivan, P.J. Defendant was convicted by a
jury of resisting a police officer, MCL 750.479;
MSA 28.747. He was sentenced to serve 365 days
in jail, with credit given for fifty-three days al-
ready served. Defendant appeals as of right, rais-
ing a number of allegations of error, none of which
require reversal.

On July 12, 1984, Officer Judy Taylor of the
Belding Police Department took a report from
defendant's wife that at approximately 9:00 P.M.
that evening defendant had come to the house,
threatened to get "the bitch," produced a shotgun,
blew off the doorknob, entered the house, blew off
another doorknob, and entered further. Defen-
dant's wife escaped by leaving through a window,
and defendant thereafter left the premises in a
pickup truck owned by a Rob Tanner. Officer
Taylor was also informed that defendant was un-
der a court order to stay away from his wife.

The neighboring City of Greenville Police De-
partment was given this information and was
requested to keep a lookout for the Tanner vehicle.
Officer Thad Taylor located the vehicle behind a
residence on North Irving Street in Greenville and
then learned from the department that defendant
was in a house three doors away. This latter house
was owned by Mr. and Mrs. Robert Tate, defen-
dant's sister and brother-in-law.

By 12:15 A.M., Officer Thad Taylor had pro-
ceeded to the Tate residence and was joined by two
state troopers, a sheriff's deputy, a Belding officer,
and three other Greenville officers. Surrounding
the home, the police, by use of a loudspeaker,
instructed the occupants to come out unarmed.

* Circuit judge, sitting on the Court of Appeals by assignment.

When nobody came out of the home, a phone call to the house was placed through dispatch.

In reply to the phone call, Mrs. Tate came out of the house and informed the police that defendant was inside. Thereupon, Mr. Tate came out and asked the police to leave. At that point, the police informed Mr. Tate of the incident in Belding and of their intention to arrest defendant.

During this conversation, Officer Jeffrey Brown looked through the open door, observed defendant lying on a sofa and began to enter the house. Mr. Tate tried to stop him, but was restrained by another officer. When inside, Officer Brown advised defendant that he was under arrest and defendant came off the sofa swinging. A physical struggle ensued, involving four officers, after which defendant was subdued and handcuffed. At the police station, defendant's hands came out of the cuffs and another fight took place before defendant was once again physically restrained.

It is uncontested that, although Officer Judy Taylor of the Belding Police Department had oral authorization for a warrant from the Ionia County Prosecutor, defendant was arrested without either a search or arrest warrant.

I

Defendant first contests the legality of his arrest, arguing he was improperly arrested in a third party's home without a search warrant. Due to such alleged impropriety, defendant suggests the charges against him should have been dismissed. In reviewing this claim, the threshold question to be resolved is whether defendant lacked standing to object to the propriety of his arrest.

At the hearing on defendant's motion to quash

in the lower court, the prosecution argued that defendant had no standing to raise this issue. The trial court ignored the issue of standing and simply rejected defendant's claim on the basis that the presence of exigent circumstances obviated the need for a warrant. We believe that this course of action was unnecessary because we find that defendant did indeed lack standing to raise the issue.

Before a defendant may attack the propriety of a search and seizure, such search and seizure must have infringed upon an interest protected by Const 1963, art 1, § 11, the provision which prohibits unreasonable searches and seizures. In making this determination, the court must decide, based upon the totality of the circumstances, whether the defendant had a reasonable expectation of privacy in the object of the search and seizure. *People v Smith*, 420 Mich 1, 28; 360 NW2d 841 (1984).

In cases such as this, where defendant is arrested in the home of a third party, he will in most cases not have had a legitimate expectation of privacy in the premises and therefore will be unable to challenge the search. *United States v Salvucci*, 448 US 83; 100 S Ct 2547; 65 L Ed 2d 619 (1980); *United States v Buckner*, 717 F2d 297, 299 (CA 6, 1983). The fact that the entry may have violated the constitutional rights of the third-party homeowner has no effect on the defendant's criminal conviction. *United States v Payner*, 447 US 727; 100 S Ct 2439; 65 L Ed 2d 468 (1980); *United States v Buckner, supra*, 717 F2d 300.

Here, nothing in the record indicates that the defendant had a legitimate expectation of privacy in the Tates' house. Although no testimony was presented at the pretrial motion, Mr. Tate testified at trial that defendant had not stayed there on a regular basis any time that week, nor any time

after the night of the offense on a regular basis. Rather, defendant went to the Tate residence after the offense merely to get a ride to his own home. As both the Tates and defendant were drunk, they decided it would be best if defendant slept there until the following morning, when defendant would turn himself in to the police. Indeed, there are no facts other than his relationship to the Tates to establish that he had standing to challenge the entry of their house without a warrant. Under these circumstances, the trial court's denial of defendant's motion to quash was not reversible error. See, e.g., *United States v Buckner, supra,* 717 F2d 300.

We also note that, even if defendant did have standing to and could successfully attack the validity of his arrest, the circuit court would not be divested of jurisdiction and defendant would not be entitled to dismissal of the charge. The sole remedy available to defendant is the suppression of evidence obtained from him following the illegal arrest. *People v Burrill,* 391 Mich 124, 133; 214 NW2d 823 (1974); *People v Boykin,* 119 Mich App 763, 765; 327 NW2d 351 (1982). Here, defendant does not argue that incriminating evidence was seized at the time of his arrest; thus, he is without a remedy. The trial court did not err in denying his motion to quash.

II

Defendant's next claim of error is that the trial court erred reversibly when it refused to instruct the jury on the element of exigent circumstances. He reasons that, since the lawfulness of the arrest is an element of the charged offense, the judge invaded the province of the jury by refusing to instruct the jury on the reasonableness of the

arrest without a warrant and deprived defendant of his fundamental right to have all elements of a crime determined by the jury.

Indeed, a lawful arrest is an element of the offense of resisting arrest, MCL 750.479; MSA 28.747; *People v Landrie,* 124 Mich App 480, 482; 335 NW2d 11 (1983). Thus, when a suspect is tried for resisting arrest, the lawfulness of an arrest, which is generally a question of law decided by the trial court, becomes a question of fact to be decided by the jury. *People v Clarence Reed,* 43 Mich App 51, 53; 203 NW2d 756 (1972). After a review of the record, we find that the trial judge adequately instructed the jury on the element of the lawfulness of defendant's arrest.

Generally, the Fourth Amendment of the United States Constitution does not require a police officer to obtain a warrant to arrest where there is probable cause to believe a felony has been committed. *United States v Watson,* 423 US 411; 96 S Ct 820; 46 L Ed 2d 598 (1976). Whether or not there is time to get a warrant is irrelevant. *Id.* In Michigan, a peace officer has statutory authority to arrest without a warrant if he has reasonable cause to believe that a felony has been committed and that the person he seeks to arrest committed the felony. MCL 764.15; MSA 28.874.

Here, the trial court instructed the jury that they had to find reasonable cause in order to conclude that the arrest was lawful. Nonetheless, defendant argues that, since he was seized in a private residence, the warrantless arrest was unlawful absent exigent circumstances. Pursuant to this reasoning, defendant requested that the trial court instruct the jury on the issue of exigent circumstances. The trial judge denied defendant's request, insisting that he had already decided the

issue as a matter of law in considering defendant's pretrial motion to quash.

Such denial did not constitute reversible error because, under the facts presented at trial, the existence of exigent circumstances was irrelevant to the issue of the lawfulness of the arrest. Defendant was protected against an unreasonable seizure by the existence of probable cause. An issuance of a search warrant to search for and seize defendant in the third party's (the Tates') home would not have further protected defendant against an unreasonable seizure. Rather, it would have merely served to safeguard the Tates' reasonable expectation of privacy in their home and to their possessions. Absent exigent circumstances, the entry into the Tate residence without a search warrant to arrest defendant was unreasonable as to the Tates. *Steagald v United States,* 451 US 204, 212; 101 S Ct 1642; 68 L Ed 2d 38 (1981). It did not render defendant's arrest unlawful.

The trial court is "not obligated to give requested instructions which are not warranted by the facts." *Jenkins v Starkey,* 95 Mich App 685, 692; 291 NW2d 170 (1980). Because the facts of the case did not warrant the requested instruction, the trial court did not err reversibly in failing to give said instruction.

We similarly find that the facts did not warrant the directing of a verdict in favor of defendant on the issue of exigent circumstances. Because the lack of a warrant did not make defendant's arrest unreasonable, the prosecutor did not in fact have to produce evidence of exigent circumstances to establish the lawfulness of the arrest. Nonetheless, even if the facts warranted such proofs, a directed verdict was still not necessary. After reviewing the record, we believe that a rational trier of fact, in considering the evidence in a light most favorable

to the prosecution, could conclude that the lawfulness of the arrest, as well as the other elements of the crime, were proven beyond a reasonable doubt. *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

### III

Isolating several comments and evidentiary rulings, defendant also argues that the trial court failed to maintain an impartial attitude, thereby requiring reversal. A judge pierces the veil of judicial impartiality so as to require reversal when his comments are of such a nature as to unduly influence the jury and thereby deprive the defendant of his right to a fair trial. *People v Doss,* 122 Mich App 571, 576; 332 NW2d 541 (1983), lv den 417 Mich 1100.16 (1983).

A careful review of the trial transcript indicates that, at times, the trial court may have appeared to be critical of defense counsel and that some of its rulings may have been inconsistent to a minor extent. However, we also observe a number of instances where the trial court treated defense counsel politely and with consideration. We conclude that the examples cited by defendant are not so egregious as to demonstrate that the judge exceeded the bounds of fairness and deprived defendant of a fair trial.

### IV

Finally, we reject defendant's assertion that he was denied effective assistance of trial counsel. After thoroughly reviewing the lower court record, we cannot conclude that defense counsel's performance violated the standards set forth in *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976), reh den 399 Mich 1041 (1977).

Nor did the trial court err reversibly when it appointed defendant's trial counsel to represent him on this appeal. In his brief, defendant admits that he originally retained his trial counsel to represent him on this appeal, whereupon counsel explained to him the impracticability of raising the issue of ineffective assistance of counsel. Nonetheless, at the subsequent motion to withdraw, counsel's only stated reasons for desiring to be relieved from his duties as appellate counsel was the defendant's inability to afford a trial transcript and his services. Having heard no other grounds in support of the motion and having found defendant to be an indigent, the lower court appointed trial counsel to continue to represent defendant on this appeal.

We therefore find that defendant has waived his argument that he should be provided with a new appeal because of his counsel's inability to sufficiently argue the effective assistance of counsel issue. The proper time to raise this argument was at the motion to withdraw. Counsel cannot accept an appointment by the trial court with knowledge of this conflict and then raise it for the first time at the end of his lengthy appellate brief. As counsel was aware of the conflict at the time of his motion to withdraw, the fact of his inability "at the time to articulate the issue" and that "he was fearful of a malpractice suit," as explained in defendant's brief, were insufficient reasons to excuse his failure to raise it at that time.

Affirmed.

R. M. MAHER, J., concurred.

M. G. HARRISON, J. *(concurring)*. I concur in the result reached in this matter, but write separately to respectfully express my belief that, when deter-

mining whether defendant was denied effective assistance of counsel, the proper standard to be used is that contained in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984), rather than that in *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976).

I am aware of the recent decisions in *People v Vicuna,* 141 Mich App 486; 367 NW2d 887 (1985), and *People v White,* 142 Mich App 581; 370 NW2d 405 (1985). However, in *People v Bellanca,* 386 Mich 708; 194 NW2d 863 (1972), the Court found that Const 1963, art 1, § 20 accords a defendant the same right to effective assistance of counsel as contemplated in the Sixth Amendment to the United States Constitution.

From time to time the Michigan courts chart their own course in interpreting nearly identical provisions of the United States and Michigan Constitutions. In the opinion of this writer, such an approach is unwarranted unless a contrary result was indicated by the people of our state in their adoption of the Michigan Constitution. A review of the proceedings of the constitutional convention of 1961 shows no such indication as to the right to effective assistance of counsel. In fact, the language of the corresponding provisions of the two constitutions in this regard is identical.

At the time *Garcia, supra,* was decided, the Court's adoption of the federal standard set out in *Beasley v United States,* 491 F2d 687, 696 (CA 6, 1974), was entirely consistent with interpreting the state right to effective assistance of counsel as being coextensive with federal constitutional guarantees. I am, therefore, persuaded that the later United States Supreme Court decision in *Strickland, supra,* is now the correct standard to apply in Michigan. Under either standard, however, defendant has not shown a violation of his right to

effective assistance of counsel so as to require reversal.