# Order

**Michigan Supreme Court**
**Lansing, Michigan**

December 11, 2015

150661

PEOPLE OF THE STATE OF MICHIGAN,
   Plaintiff-Appellee,

v

STEPHANIE WHITE,
   Defendant-Appellant.

_____/

Robert P. Young, Jr.,
Chief Justice

Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen,
Justices

SC: 150661
COA: 318654
Saginaw CC: 12-037836-FH

On October 21, 2015, the Court heard oral argument on the application for leave to appeal the October 21, 2014 judgment of the Court of Appeals.  On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

   MCCORMACK, J. (*concurring*).

   Because I believe that, when the evidence is viewed in a light most favorable to the prosecution, a rational jury could have found that there was sufficient evidence to conclude beyond a reasonable doubt that Officer Brent Green reasonably believed that Stephen White lived at the defendant's home, I concur in the majority's decision to deny leave to appeal.  The denial is without prejudice to the defendant to raise any questions regarding her trial counsel's constitutional effectiveness in a motion for relief from judgment with respect to counsel's handling of the only issue she contests—whether Officer Green's presence in her home was lawful.  The effect of trial counsel's failure to understand the legal standard governing his or her client's case is not before us here.  I write separately to more fully explain my views.

   On September 5, 2012, Officer Green arrived at the home of the defendant, Stephanie White.  Officer Green was looking for the defendant's son, Stephen White, who had outstanding arrest warrants.  When Officer Green knocked on the defendant's back door, Mr. White came to it.  Mr. White started to open the door, but upon seeing Officer Green, he turned and walked quickly toward the front of the home.  Officer Green stopped the door from closing and entered the home.

   When Officer Green entered the dining room, he could no longer see Mr. White, and it was unclear whether Mr. White had left the home through the front door or gone upstairs.  When the defendant entered the dining room, Officer Green informed her that he was looking for her son.  The defendant told the officer that her son did not live there and that he needed a search warrant to be in her home.  Officer Green replied that he did not need a search warrant because he had just seen Mr. White.  The defendant insisted on seeing a warrant and attempted to block Officer Green from searching the home.  When

the defendant attempted to prevent Officer Green from searching upstairs, Officer Green handcuffed her and put her in the back of his patrol car.

The defendant was convicted of resisting or obstructing a police officer under MCL 750.81d(1). The elements of this offense are " '(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties.' " *People v Quinn*, 305 Mich App 484, 491 (2014), quoting *People v Corr*, 287 Mich App 499, 503 (2010). In addition, as this Court made clear in *People v Moreno*, 491 Mich 38, 52 (2012), the prosecution must also establish that the officer's actions were lawful.[1]

The defendant does not dispute that she resisted and obstructed Officer Green or that she knew Officer Green was a police officer performing his duties. She argues only

---

[1] It is not clear from post-*Moreno* caselaw whether the second element of resisting and obstructing implicitly requires that the officer be "lawfully" performing his or her duties or whether lawful action by the officer is a separate, third element.

In *Quinn,* the Court of Appeals concluded that *Moreno* resurrected what has been a third element:

> Additionally, according to *Moreno*, 491 Mich at 52, "the prosecution must establish that the officers' actions were lawful" as an element of resisting or obstructing a police officer under MCL 750.81d. We note that in *Moreno,* our Supreme Court did not explicitly state, in so many words, that the lawfulness of the officers' actions is an "element" of resisting or obstructing a police officer. However, it was clear from context and the Court's discussion of the history of the right to resist unlawful arrest that such lawfulness had been considered an "element" before [*People v*] *Ventura* [262 Mich App 370 (2004)]. Furthermore, cases before *Ventura* explicitly held that the lawfulness of the arrest was an "element." See, e.g., *People v Dalton,* 155 Mich App 591, 598, 400 NW2d 689 (1986). Consequently, it is clear that under *Moreno,* as at common law, the prosecution must establish that the officers acted lawfully as an actual element of the crime of resisting or obstructing a police officer under MCL 750.81d. [*Quinn*, 305 Mich App at 491-492.]

I see no functional difference between understanding *Moreno* as concluding that the officer's actions must be lawful as an implicit part of the second element or as a separate, third element of the crime, so this uncertainty does not affect my analysis.

that there was insufficient evidence from which the jury could have concluded that the officer had a reasonable belief that her son lived at her house.

"[A]n arrest warrant alone is not sufficient authority for entry into the home of a third party to arrest the subject of an arrest warrant." *People v Oliver*, 417 Mich 366, 376 (1983), citing *Steagald v United States*, 451 US 204, 205-206 (1981). But "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v New York*, 445 US 573, 603 (1980).

Under *Payton*, an officer executing an arrest warrant may enter a dwelling only if the officer has "reason to believe," or a "reasonable belief," that (1) the location is the defendant's residence and (2) the defendant is present at the time of entry. See, e.g., *United States v Graham,* 553 F3d 6, 12 (CA 1, 2009) ("Whether Graham actually 'resided' at the apartment, then, is not dispositive so long as the police 'reasonably believed' prior to entry that he (1) resided at the apartment and (2) would be present."); *United States v Gay*, 240 F3d 1222, 1226 (CA 10, 2001) ("In a *Payton* analysis, this court recognizes a two-prong test: officers must have a reasonable belief the arrestee (1) lived in the residence, and (2) is within the residence at the time of entry.").[2]

The federal circuits have employed varying approaches to defining reasonable belief and its relationship to probable cause. Some have indicated that reasonable belief requires a lesser degree of knowledge than probable cause, see, e.g., *United States v Thomas*, 368 US App DC 285, 289 (2005), and *United States v Lauter*, 57 F3d 212, 215 (CA 2, 1995), but some have indicated that reasonable belief is functionally the same as probable cause, see *United States v Gorman*, 314 F3d 1105, 1111 (CA 9, 2002), and *United States v Barrera*, 464 F3d 496, 501 (CA 5, 2006). While the United States Court of Appeals for the Sixth Circuit has stated that whether *Payton*'s "reason to believe" language creates a lesser standard than probable cause "remains an open question in our circuit," the court did explain that " '[r]easonable belief is established by looking at common sense factors and evaluating the totality of the circumstances.' " *United States v Hardin*, 539 F3d 404, 420, 426 (CA 6, 2008), quoting *United States v Pruitt*, 458 F3d 477, 482 (CA 6, 2006) (alteration in original). See *United States v Magluta*, 44 F3d 1530, 1535 (CA 11, 1995) ("[I]n order for law enforcement officials to enter a residence to execute an arrest warrant for a resident of the premises, the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, must warrant a reasonable belief that the location to be searched is the suspect's dwelling, and

---

[2] See also *United States v Thomas*, 368 US App DC 285, 289 (2005); *United States v Lovelock*, 170 F3d 339, 343 (CA 2, 1999); *United States v Veal*, 453 F3d 164, 167 (CA 3, 2006); *United States v Hill*, 649 F3d 258, 262 (CA 4, 2011); *United States v Route,* 104 F3d 59, 62 (CA 5, 1997); *United States v Risse,* 83 F3d 212, 216 (CA 8, 1996); *United States v Magluta*, 44 F3d 1530, 1535 (CA 11, 1995).

that the suspect is within the residence at the time of entry.").

There is no doubt that the trial testimony supported a finding that when Officer Green entered the defendant's home, he had an arrest warrant for her son and had actual knowledge that her son was present. The only question, therefore, is whether the testimony supports a finding beyond a reasonable doubt that Officer Green reasonably believed that the defendant's son lived at her home.

Normally when reviewing sufficiency-of-the-evidence claims we defer to the fact-finder regarding credibility determinations and weight-of-the-evidence determinations. See *People v Wolfe*, 440 Mich 508, 513-516 (1992). Here, however, we know that the jury did not make any findings on this particular question. It appears that the prosecutor, the defendant's counsel, and the court all misunderstood the controlling Fourth Amendment standard, and therefore all agreed that the officer's conduct was lawful merely because he had arrest warrants for the defendant's son.

In closing, the prosecutor told the jury, "I believe the Judge is going to instruct you that the officer had the lawful authority to enter the house based on the LEIN [Law Enforcement Information Network] information that he had." Additionally, the prosecutor told the jury that the officer had a "valid arrest warrant for the person Stephen White who he believed was at that residence." The prosecutor highlighted that the defendant admitted "that, yeah, I knew if he saw my son in there that he's able to enter into my apartment and try to make that arrest . . . ." He concluded that the defendant "resisted, obstructed, opposed, and endangered [Officer] Green when he's attempting to legally do what he was sworn to do, and part of it is to effectuate arrest warrants of those who have valid arrest warrants against them."

Defense counsel did no better. Counsel told the jury, "Because [Officer Green] had a warrant he had the legal right to go into the house to get [Mr. White]." Counsel explained that, as Officer Green had told them, when "there's an arrest warrant out there, . . . you go to where you believe they are and make an arrest."

The trial court instructed the jury consistently with the attorneys' incorrect statements of the law: "An officer who relies on LEIN information has the legal authority to enter a house to effectuate an arrest warrant."

Not so; this instruction was erroneous. Not only is an arrest warrant insufficient to provide an officer the legal authority to enter the home of a third party, *Steagald*, 451 US at 205-206, the prosecution is required to establish that the officer's actions were lawful, and the lawfulness of the officer's actions is a question for the jury, see *Quinn*, 305 Mich App at 494, citing *Moreno*, 491 Mich at 51-52. In this case, the lawfulness of the officer's presence in the defendant's home depended on a finding that the officer had a reasonable belief that the location entered was the suspect's dwelling.

In her application for leave to appeal, the defendant has raised only the claim that there is insufficient evidence to support a finding that the officer reasonably believed Mr. White lived at 2855 Germain. To rule on this sufficiency claim, then, we must consider what testimony a rational jury could have believed to support a finding, had they been asked to make one, that Officer Green reasonably believed Mr. White lived at the defendant's home. See *Wolfe*, 440 Mich at 515. Further, when determining whether sufficient evidence has been presented to sustain a conviction, we must view the evidence in a light most favorable to the prosecution. *Id.*

From the trial record we know that Officer Green had been to the defendant's address "a couple different times when [Mr. White] and his girlfriend had had arguments," but he had never been inside the house. On the day of the incident giving rise to this case, Officer Green received a warrant request from his supervisor telling him that Mr. White had an outstanding domestic violence warrant. The address listed on this warrant was the defendant's address, 2855 Germain. Officer Green was never asked whether he believed Mr. White lived at that address.

Given this record, even though the trial court applied an erroneous legal standard when it instructed the jury that the existence of an arrest warrant provides an officer the lawful authority to enter a house to effectuate the arrest warrant, there nonetheless was sufficient evidence from which the jury could have concluded, had it been asked, that Officer Green reasonably believed that Mr. White lived at the defendant's house. Because the only claim before us is that the evidence was insufficient to support the conviction, I concur in the majority's decision to deny leave to appeal.

The defendant has not asked us to consider the propriety of the court's jury instruction or her lawyer's constitutional effectiveness for failing to properly understand the elements of the crime with which she was charged, failing to properly understand that an arrest warrant alone is insufficient under *Steagald* for an officer to enter a third party's dwelling, or failing to properly understand that the prosecution was required to prove, at minimum, that the officer reasonably believed the dwelling to be her son's residence and therefore failing to litigate that element of the charge in a motion to dismiss or litigate it properly at trial so that the jury could have decided it.

The Court's denial of the defendant's application for leave to appeal on her sufficiency claim today does not prevent the defendant from filing a motion under Subchapter 6.500 of the Michigan Court Rules for relief from the judgment on the basis of any claim that her counsel was constitutionally ineffective.

BERNSTEIN, J., joins the statement of MCCORMACK, J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

December 11, 2015



Clerk

d1208