WATSON v QUARLES

Docket No. 75123. Submitted February 20, 1985, at Detroit.—Decided
    November 5, 1985. Leave to appeal applied for.

Plaintiff Norman Watson was shot by defendant Anthony
    Quarles, a Detroit police officer, during an arrest. Watson and
    his wife, Oneida Watson, brought an action against Quarles,
    other police officers and the City of Detroit in the Wayne
    Circuit Court. The court dismissed the city on the basis of
    governmental immunity, entered a judgment on a jury verdict
    for plaintiffs and denied a motion for a judgment notwithstand-
    ing the verdict for the individual defendants based on govern-
    mental immunity. The individual defendants appealed. *Held:*

    Plaintiff's complaint alleged excessive force in effecting an
    arrest rather than negligence in the decision to arrest. The
    specific activity complained of was ministerial-operational and
    not immune for tort liability.

    Affirmed.

1. GOVERNMENTAL IMMUNITY — GOVERNMENTAL EMPLOYEES.

    Lower level officers, employees, and agents are immune from tort
    liability only when they are acting during the course of their
    employment and are acting, or reasonably believe they are
    acting, within the scope of their authority, acting in good faith,
    and performing discretionary-decisional, as opposed to ministe-
    rial-operational, acts.

2. GOVERNMENTAL IMMUNITY — POLICE OFFICERS — ARREST.

    Police officers, especially when faced with a potentially dangerous
    situation, must be given a wide degree of discretion in deter-
    mining what type of action will best ensure the safety of the
    individuals involved and the general public, the cessation of
    unlawful conduct, and the apprehension of wrongdoers; the

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] Am Jur 2d, Municipal, School, and State Tort Liability §§ 53-75.
    See the annotations in the ALR3d/4th Quick Index under Public
    Officers and Employees.

[2] Am Jur 2d, Municipal, School, and State Tort Liability §§ 85-102.
    Immunity of public officer from liability for injuries caused by
    negligently released individual. 5 ALR4th 773.

determination of what type of action to take is a discretionary-decisional act entitled to immunity; once that decision is made, however, the execution thereof must be performed in a proper manner.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw)*, for plaintiffs.

*Donald Pailen,* Corporation Counsel, and *Sharon Polackmow,* Assistant Corporation Counsel, for defendants.

Before: WAHLS, P.J., and SHEPHERD and E. A. QUINNELL,* JJ.

PER CURIAM. The question in this case is whether appellants, three City of Detroit police officers, are immune from tort liability for damages caused by their negligence in effecting the arrest of plaintiff Norman Watson. We conclude that the officers are not immune and, therefore, judgment in favor of plaintiffs was proper.

On November 7, 1979, Officer Anthony Quarles shot Watson in the leg. Plaintiffs commenced an action against Quarles and the city, alleging *inter alia* negligence and wilful and wanton misconduct. Subsequently, Quarles was deposed and testified that, at the time he shot Watson, he did not know where his fellow officers were, but he thought they should have been right there with him. On the basis of the Quarles's testimony, plaintiffs filed an amended complaint, adding as defendants Officer Bruce Hesler, John Parks and Donald Hughes on the theory that the officers failed to come to the aid of Watson or Quarles so as to minimize the injury to Watson. The case came on for trial in June, 1983, against all defendants except Hesler,

---

* Circuit judge, sitting on the Court of Appeals by assignment.

who had not been served with process. By special verdict, the jury decided that the officers were negligent but that their actions were not wilful and wanton; compensatory damages were determined to be $150,000 for Watson and $20,000 for his wife, Oneida; Watson was found to be 50% comparatively negligent. The court reduced plaintiffs' damages as found by the jury by 50% and entered judgment against the officers. The city was dismissed on the basis of governmental immunity. The individual defendants moved for judgment notwithstanding the verdict, claiming immunity from suit for acts of simple negligence undertaken in the exercise of discretion. This motion was denied and the officers appeal as of right.

Watson's account of the shooting incident differed significantly from that of defendants. Watson testified that he was leisurely driving home with an acquaintance, I. T. Hill, as his passenger. They stopped at a McDonald's restaurant late in the evening for something to eat. While he was looking for a parking space, Watson's way was blocked by a car with its high beams on. A man, almost six and one-half feet tall and wearing a tan trench coat, got out of the car and demanded to see Watson's driver's license and registration. Watson assumed the man was a police officer and was reassured in this regard when a second car pulled up driven by a uniformed officer. Watson gave his license to the officer in the trench coat, Officer Parks, who then demanded to know where Watson had narcotics. Parks did not tell Watson why he had been stopped nor that he was under arrest but kept repeating the demand that Watson reveal the location of the narcotics. Parks advanced on Watson and the latter backed away until he was near the wall bounding the parking lot. Quarles, who had exited from the second car, then shot Watson in

the left leg without giving any kind of warning. Watson denied that he threatened the officers or assumed a martial arts stance, although he admitted that six or seven years earlier he had attended Tae Kwon Do classes and attained the seventh level, for which he was entitled to wear a green belt. Watson maintained, however, that he had not stayed in training and had lost all his skills.

The officers gave essentially the following version. The four officers were riding together in an unmarked cruiser. Hughes was driving and the only one in uniform. While outbound on Gratiot, they observed defendant drive south on Van Dyke at an excessive rate of speed, go the wrong way on a one-way street and turn onto Gratiot heading downtown. Hughes swung the cruiser around behind Watson and turned on the four-way emergency flashers and the spotlights. When Watson pulled into the McDonald's, Hughes did not follow him all the way around but cut across into the exit lane to prevent Watson from simply driving back onto Gratiot. Hughes, being in uniform, approached Watson and requested his license and registration. Watson did not comply but, seeing Hesler peering into the vehicle, tried to slam a door on the officer and became belligerent. Watson announced that he was a black belt in karate and he took up a martial arts stance. Hughes and Parks told Watson that he was under arrest for not producing a driver's license (and, possibly, also for assaulting an officer). As Watson said he was going nowhere, Hughes, Parks and Quarles tried to circle around him while Hesler kept an eye on Hill. Watson kept raising his leg as though to kick and thus held the three officers at bay. None was willing to charge Watson, each fearing serious bodily harm or death should Watson land a kick on a vulnerable spot. The officers focused their

attention completely on Watson and were virtually oblivious of each other. Watson then singled out Quarles for attack and attempted to kick him. On the third kick, Quarles drew his .357 magnum and shot Watson in the left leg.

Our consideration of the issue before us is guided by *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984), which the Supreme Court decided subsequent to the trial in this case. In *Ross,* p 592, the Court held in pertinent part:

"Lower level officers, employees, and agents are immune from tort liability only when they are

"a) acting during the course of their employment and are acting, or reasonably believe they are acting, within the scope of their authority;

"b) acting in good faith; and

"c) performing discretionary-decisional, as opposed to ministerial-operational, acts.

" 'Discretionary-decisional' acts are those which involve significant decision-making that entails personal deliberation, decision and judgment. 'Ministerial-operational' acts involve the execution or implementation of a decision and entail only minor decision-making."

The question in this case is whether appellants were performing discretionary-decisional or ministerial-operational acts when Watson was shot. In this regard, the *Ross* opinion, pp 659-660, is of significant further aid:

"The parties agree that the officers did not sit idly by while the fight occurred. The officers decided not to deal with the disturbance alone and immediately called for backup assistance, which arrived six to ten minutes later. Plaintiffs do not allege that the officers delayed too long in requesting assistance, gave the wrong address, etc. Instead, plaintiffs maintain that the officers did not take the type of action which plaintiffs believe would have been appropriate.

"Police officers, especially when faced with a potentially dangerous situation, must be given a wide degree of discretion in determining what type of action will best ensure the safety of the individuals involved and the general public, the cessation of unlawful conduct, and the apprehension of wrongdoers. The determination of what type of action to take, *e.g.*, make an immediate arrest, pursue a suspect, issue a warning, await back up assistance, etc., is a discretionary-decisional act entitled to immunity. Once that decision has been made, however, the execution thereof must be performed in a proper manner, *e.g.*, the arrest must be made without excessive force, the pursuit of the suspect must not be done negligently, the request for assistance must include reasonably accurate information, etc. Since plaintiffs merely allege negligent performance of a discretionary-decisional act, summary judgment for the individual officers was properly granted.[51]

---

[51] In *Sherbutte v Marine City*, 374 Mich 48, 54-55; 130 NW2d 920 (1964), plaintiff brought an action against a police officer for allegedly using excessive force in effectuating his arrest. This Court reversed summary judgment for the officer, stating:

" 'Appellee's theory is that because *Williams* excluded "discretionary" acts, and that since a police officer has discretion as to whom he will arrest, for what reason the arrest will be made, and how much force will be used, his action is a "discretionary" one. The theory is untenable.

\* \* \*

" 'The action of a police officer in making an arrest cannot be considered within the broad scope of the discretion allowed a free government in its legislative, executive, or judicial branch.'

"This holding is not necessarily in conflict with our decision today. In *Sherbutte*, plaintiff did not allege that the officer's decision to arrest him was improper, but that the officer had effectuated the arrest in a tortious manner. Unlike the instant case, plaintiff there properly alleged the negligent performance of a ministerial-operational activity for which there is no immunity for tort liability."

---

In this case, appellants testified at trial that each of them was seeking to take Watson into custody after he was told that he was under arrest. Watson's complaint is not so much against the officers' decision to arrest but with the excessive force used in effectuating the arrest. Thus, the

specific activity complained of is clearly ministe-
rial-operational and there is no immunity from
tort liability. See *Wilson v Beebe,* 770 F2d 578, 589
(CA 6, 1985), but *cf. Ealey v Detroit,* 144 Mich App
324; 375 NW2d 435 (1985).

In a proper case, a distinction can be made
between the shooting of plaintiff by defendant
Quarles on the one hand and the activities of
Hughes and Parks on the other. Plaintiff's com-
plaint is based upon his having been shot. The
only person who participated in the shooting was
Quarles. Had the defendants raised the issue on
appeal of whether there was sufficient evidence
against Hughes and Parks to go to the jury on the
issue of negligence, we would have been faced with
the need to resolve that question. Since the defen-
dants have failed to raise it on appeal, we will not
do so here. Nevertheless, we do not wish to imply
that, in future cases, activities like those of
Hughes and Parks, considered alone, will justify a
finding of negligence regardless of whether the
activities are protected by the doctrine of govern-
mental immunity.

Affirmed.