WASHINGTON v STARKE

Docket No. 103859. Submitted August 16, 1988, at Grand Rapids. Decided November 22, 1988.

Leon Washington, personal representative of the estate of Hardy James, Jr., brought a wrongful death action in Berrien Circuit Court against Dean Starke and Dale Easton, Benton Harbor police officers, Sam Watson, the Public Safety Director for Benton Harbor, and the City of Benton Harbor. James was shot on June 20, 1982, as he ran from a hardware store that he and two juvenile accomplices had broken into. The fatal shot was fired by Officer Starke after James had continued to run away despite repeated orders by the police to stop. Easton was dismissed as a defendant by stipulation. Each of the remaining defendants moved for summary disposition on the basis of governmental immunity. Summary disposition was granted by John T. Hammond, J., in favor of Watson and the city on June 29, 1987. Summary disposition was granted in favor of Starke on September 23, 1987. Plaintiff appealed.

The Court of Appeals held:

1. A police officer is immune from tort liability only when he is acting in the course of his employment and acting, or reasonably believes he is acting, within the scope of his employment, acting in good faith and performing a discretionary function.

2. The local administrative order relative to the use of firearms cannot override the statewide fleeing felon rule.

3. The Michigan fleeing felon rule allowed a police officer to use deadly force to prevent the escape of a fleeing felon. In 1985, the United States Supreme Court held that such broad authorization of the use of deadly force was unconstitutional. While that holding was retroactive, thus rendering the Michigan fleeing felon rule unconstitutional at the time of this 1982

REFERENCES

Am Jur 2d, Arrest §§ 80, 84, 114.

Am Jur 2d, Municipal, County, School, and State Tort Liability §§ 428 et seq., 464 et seq.

Modern Status: right of peace officer to use deadly force in attempting to arrest fleeing felon. 83 ALR3d 174.

shooting, the question of whether Officer Starke is entitled to immunity turns not on whether he had authority to use deadly force, but rather whether he reasonably believed he had such authority. The questions of whether Officer Starke reasonably believed he was acting within the scope of his authority and whether he was acting in good faith must be resolved on remand.

4. The decision by a police officer as to the amount of force to be used to effect an arrest is a discretionary rather than a ministerial act.

5. Watson, as the highest executive official in Benton Harbor's police department, is absolutely immune for acts committed in the exercise of his executive function. The supervision of departmental employees is conduct within his executive authority.

6. Since Officer Starke's action with respect to stopping the fleeing felon was in the furtherance of a governmental function, the City of Benton Harbor is immune from any vicarious liability arising out of Starke's act.

Affirmed in part, reversed in part and remanded.

1. ARREST — FLEEING FELONS — DEADLY FORCE — CONSTITUTIONAL LAW — RETROACTIVITY.

The Michigan fleeing felon rule, which permitted the use of deadly force to prevent the escape of a fleeing felon, has been held to be constitutionally infirm to the extent that it permitted an officer to use deadly force in the absence of the threat of death or serious physical injury to the officer or others; since the United States Supreme Court case which held the Michigan rule to be unconstitutional overruled no prior United States Supreme Court precedent, that holding should be given retroactive effect.

2. ARREST — FLEEING FELONS — DEADLY FORCE — POLICE OFFICERS.

A police officer could not reasonably be expected to know, prior to the 1985 holding of the United States Supreme Court, that the Michigan fleeing felon rule was constitutionally infirm; accordingly, prior to 1985 a police officer could have reasonably believed that it was within the scope of his authority to use deadly force to effect the arrest of any fleeing felon.

3. GOVERNMENTAL IMMUNITY — POLICE OFFICERS — ARREST — USE OF DEADLY FORCE.

The decision by a police officer to use deadly force to effect an arrest is considered, for the purpose of governmental immunity, to be a discretionary rather than a ministerial act.

4. Governmental Immunity — Chief of Police — Executive Authority.

A chief of police is absolutely immune from tort liability with respect to acts involving the exercise of his executive authority.

5. Governmental Immunity — Municipalities — Vicarious Liability — Governmental Function.

A municipality is immune from vicarious liability arising out of a police officer's use of excessive force in effecting an arrest, since making an arrest is in the furtherance of a governmental function.

6. Appeal — Final Judgment — Prior Orders.

All prior nonfinal rulings and orders, including orders granting partial summary judgment, are incorporated into the subsequently entered final judgment for the purpose of bringing an appeal.

*Riccardo D. Arcaro,* for plaintiff.

*Craig, Farber, Downs & Dise, P.C.* (by *Timothy Downs*), for defendants.

Before: MacKenzie, P.J., and McDonald and R. E. Robinson,* JJ.

Per Curiam. Plaintiff brings this wrongful death action in his capacity as personal representative of the estate of Hardy James, Jr., deceased. Defendant Easton was dismissed from the suit by stipulation of the parties, and the trial court granted summary disposition on the ground of governmental immunity in favor of defendants Sam Watson, City of Benton Harbor, and Dean Starke. Plaintiff appeals as of right from the orders granting summary disposition in favor of Dean Starke, the City of Benton Harbor and Sam Watson, its public safety director.

This case arises out of the shooting death of

* Former circuit judge, sitting on the Court of Appeals by assignment.

Hardy James, Jr. on June 20, 1982. In the early morning hours of that day, James and two juvenile accomplices broke into the Comet True Value Hardware on Highway M-39 in Berrien County. Several Benton Harbor police officers arrived at the scene shortly after receiving a call, and while the burglary was still in progress. Officers Starke and Easton arrived moments later as backup for other officers who had entered the store.

Officers inside the store observed a large pile of guns on the floor near a broken window. When the officers discovered a man lying in an aisle, the man got up and ran from the building. The officers in the store identified themselves and fired a pistol at the suspect when he continued to flee despite their orders to halt. Once outside the building, the suspect engaged in a brief struggle with officers from the Berrien County Sheriff's Department, and then continued to run away from the building. The suspect continued to run despite the officers' repeated orders to stop. One officer fired a shotgun at the suspect, apparently striking him in the hand. Starke fired two shots at him, the second shot striking him in the back of the skull and causing his death. The suspect, plaintiff's decedent, was 298 feet from Starke when the fatal shot was fired. No weapon was found on or about him. The two juvenile accomplices were arrested in the building. There is no evidence that decedent was either armed or dangerous or that Starke believed him to be.

Before commencing this suit, plaintiff filed a civil rights action in federal district court. That action was dismissed at a hearing held on November 27, 1985. *Washington v Starke*, 626 F Supp 1149 (WD Mich, 1986), app dismissed without opinion 791 F2d 936 (CA 6, 1986).

The most critical issue raised on appeal is

whether Starke is entitled to governmental immunity.

When faced with a motion for summary disposition on the ground of governmental immunity pursuant to MCR 2.116(C)(7), the burden is upon the plaintiff to plead facts in avoidance of the immunity. *King v Arbic,* 159 Mich App 452, 457; 406 NW2d 852 (1987).

Our Supreme Court in *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567, 633-634; 363 NW2d 641 (1984), established a three-prong test for determining the applicability of governmental immunity to the actions of lower level public employees as follows:

> Lower level officials, employees, and agents are immune from tort liability only when they are
> 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;
> 2) acting in good faith; and
> 3) performing discretionary, as opposed to ministerial acts.

Defendants contend that Starke's actions were within the scope of his authority because his conduct was governed by the common law rule permitting deadly force to be used in the apprehension of fleeing felons. At the time of the June, 1982, shooting, Michigan adhered to that rule. In *Werner v Hartfelder,* 113 Mich App 747, 752; 318 NW2d 825 (1982), lv den 418 Mich 906 (1984), this Court, citing *People v Gonsler,* 251 Mich 443; 232 NW 365 (1930), *People v Whitty,* 96 Mich App 403; 292 NW2d 214 (1980), and *Jenkins v Starkey,* 95 Mich App 685; 291 NW2d 170 (1980), held that Michigan follows the common law rule that a police officer may use deadly force to prevent the escape of a fleeing felon.

While recognizing Michigan's fleeing felon rule, plaintiff argues that it had been abrogated in this case by Departmental General Order 76-10-12-A issued by the Benton Harbor Police Chief, which was in effect on the day of the shooting. This order restricted the use of deadly force by officers as follows:

A. FIREARMS MAY BE USED IN THE FOLLOWING SITUATIONS:

\* \* \*

4. *Fleeing Offender*—Only when it is a known felon who has used, or threatened to use, deadly force in the commission of a crime and all other attempts to prevent the escape have failed. An important aspect in making the decision to use deadly force is:

a. Whether or not to delay the arrest may result in additional injury or death to officer or other persons.

b. The likelihood of a non-violent apprehension at a later date.

B. FIREARMS SHALL NOT BE USED IN THE FOLLOWING INSTANCES:

\* \* \*

5. *Suspicion of Felony*—Deadly force shall not be used on mere suspicion that a crime, no matter how serious, has been committed, or that the person being sought committed the crime. The officer either should have witnessed the crime or have sufficient and reliable information to *know* as a virtual certainty that the suspect committed an offense in which deadly force was used or threatened.

\* \* \*

Note that the crime of burglary in and of itself is *not* considered a violent felony. Therefore, deadly force *shall not* be used to prevent the escape of a burglary suspect. Better a delayed apprehension of a suspect, who in many cases is a

juvenile, than placing *an* officer in legal jeopardy. [Emphasis in original.]

While an administrative order issued by a municipal department may be valid as a guide for departmental personnel, it cannot override existing state law where the two are in conflict. This question was addressed in *Spruytte v Walters*, 753 F2d 498 (CA 6, 1985), wherein the Sixth Circuit Court of Appeals held that a policy directive issued by the Michigan Department of Corrections was invalid because it conflicted with a state regulation adopted pursuant to legislative mandate. We likewise hold that Benton Harbor's Departmental Order 76-10-12-A cannot supersede the Michigan common law fleeing felon rule.

This matter would normally come to an end here, but for the fact that in 1985, three years after the events which govern this case, the United States Supreme Court, in *Tennessee v Garner*, 471 US 1; 105 S Ct 1694; 85 L Ed 2d 1 (1985), held unconstitutional Michigan's fleeing felon rule, when it ruled that the Fourth Amendment to the United States Constitution prohibits the use of deadly force to prevent the escape of a suspected felon in the absence of a significant threat of death or serious physical injury to the arresting officer or others. Plaintiff suggests that, while the *Garner* Court did not so state, the *Garner* opinion is retroactive in its effect to the events with which we are here concerned. We agree.

The federal district court in *Washington v Starke, supra*, addressed the question of the retroactivity of *Garner* and, while recognizing that one federal appeals circuit had found it to be retroactive, *Acoff v Abston*, 762 F2d 1543 (CA 11, 1985), nevertheless found that *Garner* was not retroactive, apparently because the Sixth Circuit Court of

Appeals had on more than one occasion refused to hold that the fleeing felon rule was unconstitutional, as had the Michigan Supreme Court. See *Werner v Hartfelder, supra.*

The analysis set forth in *United States v Johnson,* 457 US 537; 102 S Ct 2579; 73 L Ed 2d 202 (1982), as followed in *Acoff v Abston, supra,* suggests that *Garner* is retroactive to all cases which were pending on appeal at the time the *Garner* opinion was issued. In *Payton v New York,* 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980), the Court held that the Fourth Amendment prohibits police from making a nonconsensual entry into a suspect's home without a warrant to make a routine felony arrest. The *Johnson* Court confronted the question of whether *Payton* should be retroactively applied to a similar factual situation arising before *Payton,* but pending on appeal at the time the *Payton* decision was announced. In holding that *Payton* was retroactive in that situation, *Johnson* ruled that, subject to certain exceptions, "a decision of this Court construing the Fourth Amendment is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered." 457 US 562. One of the exceptions preserved earlier precedential opinions of the Court which denied retrospective effect to decisions which express a rule of criminal procedure that is a clear break with the past. *Desist v United States,* 394 US 244; 89 S Ct 1030; 22 L Ed 2d 248 (1979). The *Johnson* Court went on to find that *Payton,* while ruling on an issue which had never been addressed by the Court, did not announce an entirely new and unanticipated principle of law, did not overrule clear past precedent, and did not disapprove an established practice that the Court had previously sanctioned. The same can be said of the *Garner* decision.

There was no prior precedent overruled by *Garner*. Nor does the decision apply to any longstanding and widespread practice which the Supreme Court had sanctioned in prior cases or ignored while lower courts had approved of the practice with near unanimity. Indeed, several courts had expressed the view that certain uses of deadly force such as the one in question here violate the Constitution. *Garner v Memphis Police Department,* 600 F2d 52 (CA 6, 1979); *Landrum v Moats,* 576 F2d 1320 (CA 8, 1978), cert. denied, 439 US 912; 99 S Ct 282; 58 L Ed 2d 258 (1978); *Mattis v Schnarr,* 547 F2d 1007 (CA 8, 1976), vacated as moot sub nom, *Ashcroft v Mattis,* 431 US 171; 97 S Ct 1739; 52 L Ed 2d 219 (1977); see also *Bivens v Six Unknown Federal Narcotic Agents,* 403 US 388, 419; 91 S Ct 1999, 2016; 29 L Ed 2d 619 (1971) (Burger, J., dissenting). [*Acoff v Abston,* 672 F2d at 1549.]

*Garner* itself noted that the basis for the common law rule permitting use of deadly force had steadily eroded, that the long term trend had been away from the rule, that fewer than half the states then adhered to the rule, and that the vast majority of the police department policies in the country had placed restrictions on the rule.

The *Garner* standard therefore should be applied in this case, and we hold that, at the time of the shooting, Michigan's common law fleeing felon rule was unconstitutional. See also *Guider v Smith,* 157 Mich App 92; 403 NW2d 505 (1987), lv gtd 429 Mich 858 (1987), cert den — US —; 108 S Ct 1079 (1988).

But the retroactive effect of *Garner* does not necessarily resolve the related issue of Officer Starke's immunity.

In *Acoff, supra,* the court was considering a series of events similar to those now before us, but within the context of a suit for damages brought

under 42 USC 1983 for violation of plaintiff's Fourth Amendment rights, rather than, as here, a suit for damages under Michigan's wrongful death act. In suits brought pursuant to § 1983, the courts have granted to lesser public officials a qualified immunity similar to that granted them by *Ross, supra.*

The *Acoff* Court, after finding that *Garner* was retroactive to the date of the events with which *Acoff* was dealing, continued:

> Police officers generally are shielded from liability for civil damages under Section 1983 insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v Fitzgerald,* 457 US 800; 102 S Ct 2727; 73 L Ed 2d 396 (1982) . . . .
>
> The pertinent question, therefore, is whether the unconstitutionality of Tuscaloosa's policy regarding use of deadly force was "clearly established" at the time of the shooting. As noted above, the decision in *Garner* was not a clear break from prior precedent and was even foreshadowed by several lower court decisions . . . . Yet the required level of clarity for a constitutional rule differs significantly for purposes of immunity and purposes of retroactivity. While any decision that does not make a clear break with the past might be applied retroactively, *United States v Johnson,* 457 US at 549-54; 102 S Ct at 2586-90, a rule must be "clearly established" before a police officer can be held personally liable for failure to follow the rule. *Wood v Strickland,* 420 US 308, 322; 95 S Ct 992, 1000; 43 L Ed 2d 214 (1975). . . .
>
> A reasonable person at the time of the shooting incident might have read the relevant appellate decisions . . . and still have concluded that a policy allowing the use of deadly force to arrest a person for a serious felony was constitutional. . . .
>
> Under these circumstances, we conclude that

Abston's good faith immunity should be resolved on remand. [*Acoff, supra,* pp 1549-1550.]

A footnote in *Ross, supra,* suggests that our Supreme Court would treat a question of retroactivity under these circumstances similarly if brought within the context of Michigan's wrongful death act:

> The requirement that the individual act, or reasonably believe he is acting, within the scope of his authority satisfies the concern of some commentators who believe that an individual should not be held liable merely because it is later determined that he acted under an unconstitutional statute or otherwise had no actual authority. [420 Mich 633, n 41.]

Accordingly, we hold that the questions whether Officer Starke reasonably believed he was acting within the scope of his authority and whether he was acting in good faith will have to be resolved upon remand.

Considering the third prong of *Ross,* the trial court, following *Butler v Detroit,* 149 Mich App 708; 386 NW2d 645 (1986), lv den 426 Mich 867 (1986), held that Officer Starke was, at the time of the shooting, performing a discretionary act as opposed to a ministerial act. We agree with *Butler,* while recognizing that another panel of this Court has held to the contrary in *Watson v Quarles,* 146 Mich App 759, 381 NW2d 811 (1985), lv den 425 Mich 864 (1986).

Plaintiff further claims error by the trial judge in granting summary disposition in favor of defendants Sam Watson and City of Benton Harbor. These defendants claim that they are entitled to governmental immunity. We agree.

Sam Watson was the highest executive official in

Benton Harbor's police department. Our Supreme Court has held that the highest executive officials of all levels of government are absolutely immune from all tort liability whenever they are acting within their executive authority. *Ross, supra,* p 592. This absolute immunity has been applied to the actions of chiefs of police for acts committed in the exercise of their executive authority. *Meadows v Detroit,* 164 Mich App 418, 426-427; 418 NW2d 100 (1987), lv den 430 Mich 883 (1988). Watson's supervision of departmental employees is conduct within his executive authority, and therefore immune from suit.

Additionally, in *Ross,* our Supreme Court held that, where an employee of a governmental agency commits a tort while he is engaged in an activity which is a governmental function, the governmental agency is immune from vicarious liability. *Ross, supra,* 625. A governmental agency is immune from suit for a police officer's tortious use of excessive force in effecting an arrest, because actions undertaken by a police officer to enforce the law constitute the exercise of a governmental function. *Sherbutte v Marine City,* 374 Mich 48, 50-51; 130 NW2d 920 (1964). The City of Benton Harbor therefore is entitled to governmental immunity, because Officer Starke's conduct in effecting the arrest of plaintiff's decedent was in furtherance of a governmental function.

Defendants argue that this Court lacks jurisdiction to address these last two issues, since the orders granting summary disposition to Sam Watson and the City of Benton Harbor were issued prior to the September 21, 1987, order granting immunity to Officer Starke and were not included in plaintiff's claim of appeal. This argument overlooks the fact that this Court has held that, "[u]pon entry of a final judgment, all prior nonfi-

nal rulings and orders (including . . . partial summary judgment . . .) are incorporated into the final judgment and are finalized for purposes of appeal." *American Federal Savings & Loan Ass'n v Orenstein*, 81 Mich App 249, 255; 265 NW2d 111 (1978).

Plaintiff finally challenges the propriety of the trial court's ruling in holding inadmissible Department Order 76-10-12-A.

Although we have held that Michigan's fleeing felon rule is retroactively unconstitutional, this departmental order is not relevant to the question of whether Officer Starke believed he was acting under a constitutional fleeing felon rule.

Affirmed in part, reversed in part and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.