Margaret NEWCOMB, as Conservator of the Estate of Jamie Byron Newcomb, A Protected Person, Plaintiff,

v.

CITY OF TROY, A Municipal Corporation; City of Troy Police Department; Larry Carey, individually and as Chief of Police; Sergeant Charles Craft, Individually and as City of Troy Police Officer; Sergeant Michael Szuminski, Individually and as City of Troy Police Officer; Officer Mark Cole, Individually and as City of Troy Police Officer; Officer Michael Lyczkowski, Individually and as City of Troy Police Officer; Officer Paul Lucas, Individually and as City of Troy Police Officer; Officer Earl Jenkins, Individually and as City of Troy Police Officer; Officer Jason Pernick, Individually and as City of Troy Police Officer; Officer Jeff Denny, Individually and as City of Troy Police Officer; Officer Wiliam McCabe, Individually and as City of Troy Police Officer; Officer Phil Dimaria, Individually and as City of Troy Police Officer; Officer Neal Piltz, Individually and as City of Troy Police Officer; Officer Robert Cantlon, Individually and as City of Troy Police Officer, Jointly and Severally, Defendants.

No. 88–71391–DT.

United States District Court, E.D. Michigan, S.D.

Aug. 18, 1989.

Lauri R. Ellias, Turner and Turner, P.C., Southfield, Mich., for plaintiff.

Albert Leader and James M. Pidgeon, Portnoy, Leader, Pidgeon & Roth, P.C., Bloomfield Hils, Mich., for defendants.

## OPINION

GILMORE, District Judge.

This case arose from an incident in August 1986 when Jamie Newcomb attempted to rob a 7–11 Store in the City of Troy. Troy Police Officers entered the store and, in the course of apprehending Newcomb, one of the officers fired a single shot and struck Newcomb in the back of the head. Newcomb, by his Conservator, brought suit in this Court alleging that the shooting violated his rights under several federal statutes, the United States Constitution, and state common law. Named as defendants were the City of Troy, its Police Department, the Chief of Police, and twelve (12) police officers. The matter is now before this Court for consideration of Defendants' Motion for Summary Judgment. An order for partial summary judgment was entered by this Court on June 26, 1989, dismissing several defendants and several counts. The disposition of the remaining counts against the remaining defendants are the subject of this opinion.

## FACTUAL BACKGROUND

Shortly after midnight on August 31, 1986, Plaintiff Jamie Newcomb entered the 7–11 Store on Crooks Road, south of Big Beaver Road, in the City of Troy. Two clerks were on duty in the store at the time, Karen Miller and Ruth Wilkerson. A number of customers were also in the store.

After being in the store for a short time, Newcomb went around the sales counter and placed a knife under the smock of Ruth Wilkerson at her back. Newcomb directed the clerks to continue waiting on the customers. For more than one-half hour, Newcomb remained in the store. He directed the clerks to empty the cash registers and the muscular dystrophy contribution jar into paper bags, and demanded that the clerks provide him with a ride away from the store. During this period, Newcomb intermittently held the knife to the backs and throats of the clerks.

At some point during the robbery attempt, the Troy Police Department was notified or learned of the robbery. Several officers arrived on the scene and took up positions outside the store. Officer Lyczkowski was positioned at the corner of one of the front windows of the store, and had a limited field of view. Approximately 30 minutes after the first officer arrived on the scene, Newcomb and Ruth Wilkerson moved out from behind the counter. Newcomb had, by this time, placed the knife in his back pants pocket. Karen Miller remained behind the counter. Newcomb then moved away from Wilkerson, leaving her alone near the front doors. Newcomb was then at a distance from both clerks for the first time since the officers arrived on the scene. At that point, the order was given for the officers to enter the store and arrest Newcomb.

Officers Cole and Lyczkowski, dressed in full uniform, were the first to enter the store. Upon entering, one of the officers shouted "Freeze." Newcomb responded by throwing a coffee pot at the officers, and ran toward the rear of the store. When Newcomb reached the end of the counter, with Officers Cole and Lyczkowski in pursuit, he turned and ran behind the counter. Karen Miller was still behind the counter, having crouched down when the police entered. A third officer, Officer Denny, had entered the store, and was in front of the sales counter.

As Newcomb continued to run behind the counter, he either tripped or lunged, and he began to fall to the ground near the position of Karen Miller. Believing that Newcomb's actions were an attempt to harm or capture Karen Miller, Officer Denny, reaching over the sales counter, fired one shot from his service revolver. The shot struck Newcomb in the back of the head, inflicting serious injury.

## PROCEDURAL BACKGROUND

Plaintiff brought a multiple-count complaint, naming as defendants the City of Troy (hereinafter "City") and the City of Troy Police Department (hereinafter "Department"). Also named, in their individual and official capacities, were Chief of Police Carey (hereinafter "Chief Carey"), Sergeants Craft and Szuminski, and Officers Denny, Cole, Lyczkowski, Lucas, Jenkins, Pernick, McCabe, DiMaria, Piltz, and Cantlon. Plaintiff alleged that defendants had violated his rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments, and that such violations were actionable under 42 U.S.C. §§ 1981, 1983, 1985, 1986, and 1988. Plaintiff also presented pendant state law claims of negligence, assault and battery, and intentional infliction of emotional distress.

Presently before this Court is Defendants' motion for summary judgment as to all claims and parties, pursuant to Rule 56 of the Federal Rules of Civil Procedure. By stipulation of the parties, an order for partial summary judgment was entered by this Court on June 26, 1989, dismissing the following matters with prejudice:

1. All pendant state claims brought against Defendants City and Department;

2. All claims against Defendant Chief Carey in his individual capacity only;

3. All claims brought pursuant to 42 U.S.C. §§ 1981, 1985 and 1986;

4. All claims premised upon the First, Fifth and Eighth Amendments to the U.S. Constitution; and

5. All claims against Defendants Lucas, Jenkins, Pernick, McCabe, DiMaria, Piltz, and Cantlon.

The matters remaining to be decided by motion or trial are as follows:

I. Pendant state law claims against:

A. Sergeants Craft and Szuminski, and Officers Cole and Lyczkowski.

B. Chief Carey in his official capacity.

C. Officer Denny.

II. Section 1983 claims against:

A. Sergeants Craft and Szuminski, and Officers Cole and Lyczkowski

B. Officer Denny.

C. City, Department, and Chief Carey.

## I. PENDANT STATE LAW CLAIMS

### A. Sergeants Craft and Szuminski; Officers Cole and Lyczkowski

 1. *Negligence.* Defendants' motion seeks dismissal of the pendant claims of negligence on the basis that Plaintiff has failed to allege a causal connection between his injuries and any act of Defendants Craft, Szuminski, Cole, and Lyczkowski. In his response, Plaintiff speculates on possible omissions by these defendants, but does so without bringing forward supporting evidence or alleging how such omissions would be causally relevant. Mere speculation or conjecture does not satisfy Plaintiff's duty to come forward with specific factual allegations "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Plaintiff has failed to adequately assert the essential element of causation. Accordingly, summary judgment is granted, and the pendant claims of negligence against Defendants Craft, Szuminski, Cole, and Lyczkowski are dismissed.

 2. *Assault and Battery.* Dismissal of the assault and battery claims is likewise sought on the basis that Plaintiff failed to allege the existence of elements essential to a proof of this common law tort. Defendants assert that the assault claims against Defendants Craft, Szuminski, Cole and Lyczkowski must fail from an absence of allegations of any unlawful threat or offer to do bodily harm. *Tinkler v. Richter,* 295 Mich. 396, 295 N.W. 201 (1940). Defendants further assert that no battery claim can be sustained where the only physical contact with Plaintiff by any of these defendants occurred after he was shot, when Defendant Cole removed the knife from Plaintiff's pocket, and then, along with Defendant Lyczkowski, assisted in rendering medical aid, *Delude v. Raasakka,* 391 Mich. 296, 215 N.W.2d 685 (1974). Plaintiff's response, even construed in a most favorable light, fails to designate specific facts amounting to an allegation of an unlawful threat or unjustified physical contact. Under these circumstances, *Celotex* directs that summary judgment be granted in favor of Defendants Craft, Szuminski, Cole and Lyczkowski on the pendant claims of Assault and Battery.

 3. *Intentional Infliction of Emotional Distress.* Summary judgment in favor of these defendants is similarly required on the claims of Intentional Infliction of Emotional Distress. In order to prevail on these claims, Plaintiff is obliged at trial to prove the four elements of this tort: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Roberts v. Auto Owners Ins. Co.,* 422 Mich. 594, 602, 374 N.W.2d 905 (1985). Defendants, in their motion, assert that Plaintiff neither alleged any causal relationship between acts of these officers and the claimed emotional distress, nor identified an "extreme or outrageous" act. Plaintiff's response could be construed to raise issues as to causation, but simply fails to answer defendants' assertion that no "extreme or outrageous" conduct was alleged. Defendants have made an adequate showing that essential elements of the tort are absent from Plaintiff's allegations, giving rise to an affirmative duty on Plaintiff to respond

by demonstrating the existence of genuine issues of material fact. *Celotex* (supra). Plaintiff has not discharged this duty. Summary judgment is granted, and the pendant claims of intentional infliction of emotional distress against Defendants Craft, Szuminski, Cole and Lyczkowski are dismissed.

### B. Chief Carey in his official capacity

■ In their motion for summary judgment, Defendants assert that the Michigan Governmental Immunity Act, MCL 691.-1407, provides the City, Department, and Chief Carey with immunity from liability. The immunity of Defendants City and Department was stipulated by the parties, and all pendant state claims against these defendants were dismissed by the order for partial summary judgment. The stipulations of the parties fail to make any mention of the status of Chief Carey in his official capacity. In oral argument, Defendants conceded that the disposition of Chief Carey was still before this Court.

Defendants have presented a meritorious claim of immunity for the City, Department, and Chief Carey. Defendants cite this Court to *Washington v. Starke*, 173 Mich.App. 230, 433 N.W.2d 834 (1988), wherein the test for determining the applicability of governmental immunity to the actions of public employees announced in *Ross v. Consumers Power Co.* (On Rehearing), 420 Mich. 567, 633–34, 363 N.W.2d 641 (1984), is applied to police officers.[1] *See also Smith v. Department of Public Health*, 428 Mich. 540, 410 N.W.2d 749 (1987). *Celotex* (supra) places an affirmative duty upon the Plaintiff to come forward in response with a factual showing of the existence of a genuine issue of material fact. Plaintiff has failed to make any such showing in this regard. It is therefore appropriate that summary judgment is granted, and all pendant state claims

against Chief Carey in his official capacity are dismissed.

### C. Pendant claims against Officer Denny

1. *Negligence.* Defendants also assert that the Michigan Governmental Immunity Act, MCL 691.1407, provides Officer Denny with immunity from liability on the negligence claim. *Washington v. Starke*, 173 Mich.App. 230, 433 N.W.2d 834 (1988). *See also, Ross v. Consumers Power Co.*, 420 Mich. 567, 363 N.W.2d 641 (1984). Plaintiff elects to forego a response to defendants' claim of immunity. Plaintiff's silence can be construed as conceding the issue of immunity for Officer Denny on this claim. Nevertheless, Plaintiff has not met his burden under *Celotex* (supra) to come forward with supported allegations of genuine issues of material fact to preclude the entry of summary judgment. Therefore, the pendant claim of negligence against Officer Denny is dismissed.

■ 2. *Assault and battery.* Defendants, relying on *Ealey v. City of Detroit*, 144 Mich.App. 324, 375 N.W.2d 435 (1985) assert that police officers are privileged to employ deadly force in the protection of themselves or others without incurring liability for assault and battery. Plaintiff, in his response, elects to address the applicability of the Michigan Governmental Immunity Act when the defendants' claim does not rest on that affirmative defense. Plaintiff asserts the unfounded equation that deadly force is necessarily excessive force. Beyond this syllogism, Plaintiff does not come forward with allegations supported by probative evidence that the elements of the underlying cause of action for assault and battery are present. Summary judgment is appropriate pursuant to *Celotex* (supra), and the claim of Assault and Battery against Officer Denny is dismissed.

---

**1.** Lower level officials, employees, and agents are immune from tort liability only when they are:

1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;

2) acting in good faith; and
3) performing discretionary, as opposed to ministerial, acts.

■ 3. *Intentional Infliction of Emotional Distress.* Defendants assert that the claim of Intentional Infliction of Emotional Distress must be dismissed for failure to allege the necessary elements of "emotional distress" caused by "extreme or outrageous" conduct. Defendants claim that there can be no emotional distress where the Plaintiff's injuries deprived him of any memory of the incident is disturbing in its implication that the defendants seek to benefit from the severity of the injury inflicted by them. That concern notwithstanding, Plaintiff's responses provides only that Plaintiff believes the shooting "was not legally or morally justified," and, therefore, extreme and outrageous conduct. Plaintiff's opinion does not suffice under *Celotex.* Summary judgment is granted, and the claim of intentional infliction of emotional distress against Officer Denny is dismissed.

## II. SECTION 1983 CLAIMS

Plaintiff's claims, brought pursuant to 42 U.S.C. § 1983, are premised on alleged violations of the Fourth and Fourteenth Amendments. The Supreme Court recently directed in *Graham v. Connor,* — U.S. —, —, 109 S.Ct. 1865, 1871–72, 104 L.Ed.2d 443 (1989), that claims of excessive force in effecting an arrest are properly analyzed by Fourth Amendment seizure standards, and not by Fourteenth Amendment substantive due process standards:

> Today we make explicit what was implicit in *Garner's [infra]* analysis, and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.

*Id.* at —, 109 S.Ct. 1871.
As the parties have acknowledged in their pleadings, allegations of Fourteenth Amendment violations are inapplicable to the instant case. Therefore, all claims premised on alleged violations of the Fourteenth Amendment are dismissed.

## A. Sergeants Craft and Szuminski, and Officers Cole and Lyczkowski

■ 1. *Sergeants Craft and Szuminski.* Recovery against these defendants under 42 U.S.C. § 1983 must be predicated on a showing that direct causal connection exists between an act of the Sergeants and the alleged deprivation. Plaintiff is obliged to demonstrate an "affirmative link." *Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976).

Defendants, in their motion, seek dismissal of these claims on the basis that Plaintiff's allegations assert no causal connection between an act of Sergeant Craft or Szuminski and the alleged deprivation of Plaintiff's right to be free from unreasonable seizure. In his response, Plaintiff relies on broadly stated suppositions that the Sergeants should have sent plain clothes officers into the store. As Defendants accurately point out in their reply, Plaintiff makes no suggestion whatever that the use of plain clothes officers would have altered the course of events, or the outcome. Here again, speculation or conjecture do not discharge Plaintiff's duty to respond with specific factual allegations that bear upon essential elements, and Plaintiff's burden to demonstrate at trial a direct causal relation. Therefore, summary judgment is granted, and the claims against Sergeants Craft and Szuminski, brought under 42 U.S.C. § 1983, are dismissed.

■ 2. *Officers Cole and Lyczkowski.* Plaintiff has likewise failed to allege a causal connection between an act of Officers Cole or Lyczkowski and the complained-of injury. Defendants have shown that the causation element is absent from the allegations pled. Plaintiff's response is limited to his belief that some wrongful act was committed, without coming forward with supporting evidence of either how the officers' conduct was wrongful, or how, if wrongful, the conduct was causually relevant to the complained-of injuries. Plaintiff contends that Officer Lyczkowski, having observed Plaintiff place the weapon in his pocket, was under a duty to Plaintiff to advise the other officers on the scene that

Plaintiff was "unarmed." Plaintiff not only offers no evidence or authority to support this supposed duty, but also fails to adequately allege that Officer Lyczkowski's conduct in this respect was causally relevant to Plaintiff's injury. No factual allegation or supporting evidence is proffered. Plaintiff has not met his burden under *Celotex* (supra). Summary judgment is appropriate, and the claims against Officers Cole and Lyczkowski under 42 U.S.C. § 1983 are dismissed.

## B. Officer Denny

■ The analysis of Plaintiff's claim that unconstitutional force was employed against him is governed by *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated...." U.S. Const. Amdt. 4. The Court, in *Garner*, took notice that "[w]hile it is not always clear just when minimal police interference becomes a seizure ... there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." (citation omitted) 471 U.S. at 7, 105 S.Ct. at 6699. The Supreme Court went on to hold unconstitutional a Tennessee statute that permitted the use of deadly force to prevent the escape of any felony suspect. The suspect in *Garner*, plaintiff's decedent, was fleeing the scene of a burglary. Memphis Police Officer Hymon, while "reasonably sure" that Garner was unarmed, 471 U.S. at 3, 105 S.Ct. at 1697, fatally shot the suspect; to prevent him from escaping over a chain link fence. Officer Hymon's "seizure" of plaintiff's decedent was authorized by the Tennessee statute and conformed with departmental policy. The Court found that it was not "reasonable" under the Fourth Amendment to employ deadly force without regard to the nature of the felony or the danger posed by the felon.

> The use of deadly force to prevent the escape of all felony suspects, whatever the circumstances, is constitutionally unreasonable. It is not better that all felony suspects die than that they escape. Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so. It is no doubt unfortunate when a suspect who is in sight escapes, but the fact that the police arrive a little late or are a little slower afoot does not always justify killing the suspect. A police officer may not seize an unarmed, nondangerous suspect by shooting him dead.

471 U.S. at 11, 105 S.Ct. at 1701.

While *Garner* frames the question of "reasonableness" under the Fourth Amendment, the disposition of this matter on summary judgment turns on Defendant Officer Denny's affirmative defense of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1983), establishes that the immunity of public officials, when advanced by a defendant, is a threshold question of law and appropriately determined on motion for summary judgment.[2]

Defendants cite this Court to *Washington v. Starke*, 855 F.2d 346 (6th Cir.1988), wherein the immunity of a police officer for the use of deadly force was tested by *Harlow*, and *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The Harlow Court expressly eliminated an inquiry into the state of mind of the person seeking to invoke the immunity, and set out a "test that focuses on the objective legal reasonableness of an official's acts." 457 U.S. at 819, 102 S.Ct. at 2739. The Court stated that public officials "are shielded from liability for civil damages

---

**2.** "Reliance on the objective reasonableness of an official's conduct, as measured by reference to clearly established law, should avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment. On summary judgment, the judge appropriately may determine, not only the currently applicable law, but whether that law was clearly established at the time an action occurred." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1981).

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. at 818, 102 S.Ct. at 2738.

In *Anderson v. Creighton, supra,* the Supreme Court considered the qualified immunity claim of an FBI agent who participated in a warrantless search of the Creightons' home. The search was conducted on Agent Anderson's mistaken belief that Dixon, a bank robbery suspect, was in the home. The Creightons brought an action against Anderson, in part, for money damages under the Fourth Amendment. *See Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The District Court granted summary judgment on the basis that Anderson had probable cause for the search, and exigent circumstances justified the failure to obtain a warrant. The Supreme Court, in overturning the Eighth Circuit's reversal of the District Court, stated:

> The principles of qualified immunity that we reaffirm today require that Anderson be permitted to argue that he is entitled to summary judgment on the ground that, in light of clearly established principles governing warrantless searches, he could, as a matter of law, reasonably have believed that the search of the Creightons' home was lawful.

483 U.S. at 641, 107 S.Ct. at 3039.

Relying on *Harlow,* the Court restated the standard to be applied in consideration of a qualified immunity claim on summary judgment:

> The relevant question in this case, for example, is the objective (albeit fact-specific) question whether a reasonable officer could have believed Anderson's warrantless search to be lawful, in light of *clearly established law and the information the searching officers possessed.* (emphasis added).

*Id.*

In *Washington v. Starke, supra,* the Court of Appeals applied the *Harlow* and *Creighton* standards to determine that the defendant officers were entitled to quali-fied immunity for the use of deadly force. While *Creighton* involved a *Bivens* claim challenging the reasonableness of a search, the Sixth Circuit reasoned that the same standards were controlling in actions pursuant to § 1983 challenging the reasonableness of a seizure. "Thus, the central issue in the present case is whether a reasonable police officer could have believed, in light of clearly established law, that the use of deadly force was lawful under the circumstances." *Starke,* 855 F.2d 346, 348 (1988).

The "clearly established law" at the time Plaintiff was seized by Officer Denny permitted the application of deadly force in limited circumstances. *Garner,* decided prior to this incident, clearly established that "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force." 471 U.S. at 11, 105 S.Ct. at 1701.

Plaintiff contends that deadly force was unreasonably applied in the present circumstance because he was merely making a futile attempt to escape, and posed no threat of harm that would justify the use of deadly force under the *Garner* standard. The undisputed facts already before this Court do not support Plaintiff's depiction of reasonableness. The analogy Plaintiff draws between the instant incident and the decedent's flight in *Garner* is not convincing. The *Garner* suspect had only to scale a fence to perfect his escape, while Plaintiff ran behind a counter that he knew was not the avenue of escape. Having spent considerable time behind that counter threatening the store clerks with a knife, Plaintiff knew that along the path he selected he would encounter Karen Miller, and could not perfect his escape by flight alone. Unlike the suspect in *Garner,* the dangerousness of Plaintiff's conduct could not be gauged by some future risk to an unidentifiable party, but presented an immediate risk to a young woman that he had previously held at knife-point.

Plaintiff further contends that the use of deadly force was unreasonable because he

**1416**

was "unarmed." This contention is premised on a novel definition of that term. Plaintiff did not become "unarmed" merely because he placed the weapon in his pants pocket, and was at no point deprived of the availability of the weapon. Plaintiff admits that he had attempted to rob the store and used the knife to effectuate this purpose. Having taken no affirmative step to relinquish the weapon, Plaintiff's claim that he was unarmed is not convincing.

A reasonable police officer in the position of Officer Denny could have believed that the use of deadly force was permissible under the clearly established law, and was necessary under the circumstances. The suspect was armed with a knife, and had convincingly demonstrated his willingness to wield that knife against the store clerks. When the officers entered the store, the suspect ran back behind the counter. The suspect's attempt to escape may have been futile, and the path he chose may have been the response of a confused and startled young man. But, for the previous half hour or more the suspect had been behind that counter holding the store clerks at knife-point. It was not unreasonable for an officer on the scene to believe that the suspect's conduct posed an immediate threat to the safety of the store clerk who was behind the counter. Whether the suspect tripped, fell, or lunged, his movements continually appeared threatening toward the clerk. Appreciating that the pursuing officers had not yet been able to subdue the suspect, an officer in the position of Officer Denny could have reasonably believed that the Plaintiff posed an immediate threat to the life or safety of the store clerk, and that deadly force was appropriate to seize Plaintiff before the clerk was captured or harmed.

The "objective legal reasonableness" of Officer Denny's use of deadly force under these circumstances meets the standards of *Harlow* and *Creighton*. Summary judgment is therefore entered on the meritorious defense of qualified immunity, and the claims against Officer Denny brought pursuant to 42 U.S.C. § 1983 for alleged violation of the Fourth Amendment are dismissed.

## C. City, Department, and Chief Carey

 Defendants cite this Court to *City of Los Angeles v. Heller*, 475 U.S. 796, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986), and argue that any imposition of liability upon the municipal defendants must be predicated upon a finding of liability on the part of Officer Denny. Defendants thus contend that the dismissal of Officer Denny is also dispositive of the claims against Defendants City, Department, and Chief Carey.

In *Heller*, plaintiff brought suit under § 1983 alleging that he was arrested with "unreasonable force" by a Los Angeles police officer. He brought claims against both the officer and the municipality. In a bifurcated trial, the claims against the officer went to the jury without instruction on affirmative defenses, such as qualified immunity. The jury returned a verdict in favor of the officer. The District Court then dismissed the claims against the City, reasoning that municipal liability was precluded by the jury's determination that the officer had inflicted no constitutional harm on the plaintiff. The Ninth Circuit reversed the District Court, reasoning that Heller's municipal liability claim was not extinguished by the general verdict. The Supreme Court reversed, concluding that a finding of constitutional injury was required to impose liability on the municipal government:

> [N]either *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 [98 S.Ct. 2018, 56 L.Ed.2d 611] (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point. (emphasis in original).

475 U.S. at 799, 106 S.Ct. at 1573.

The Court believes that *Heller*, while instructive in the instant case, is distinguish-

able, and does not compel the result sought by Defendants. The claims against Officer Denny are dismissed above on the basis of qualified immunity under *Anderson v. Creighton,* supra. The Court is nonetheless mindful that this meritorious affirmative defense of qualified immunity is a matter of law while the ruling in *Heller* rested upon the jury's determination that the officer's conduct was not, in fact, an "unreasonable" seizure. Defendants' contention that Officer Denny's meritorious affirmative defense should be equally dispositive of the claims against the municipal defendants invites an expansion of *Heller* that is neither appropriate nor necessary to resolve the instant case.

The liability of the local government is controlled by *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), which clearly establishes that a local government cannot be held liable on a *respondeat superior* theory.

> Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694, 98 S.Ct. at 2037.

Thus, the official policy of the local government must be "the moving force of the constitutional violation". *Id.*

■ Defendants, in their motion assert that summary judgment should be granted on the basis that Plaintiff's allegations effectively rest on a single incident—the shooting of Plaintiff by Officer Denny—and that a single incident is not a policy sufficient to impose liability on a local government. *City of Oklahoma v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), relied upon by Defendants, does not compel the result sought by Defendants. The holding in *Tuttle* would permit imposing liability from a single incident, but only where that incident was a result or manifestation of an underlying policy.

> Proof of a single incident of unconstitutional activity is not sufficient to impose

liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.

471 U.S. at 823, 105 S.Ct. at 2436.

Defendants would construe *Tuttle* too narrowly.

Conversely, Plaintiff's response offers an overly broad application of *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Citing to *Pembaur* generally, Plaintiff appears to propose that a single incident is itself sufficient to impose liability under § 1983. This does not accord with the qualified language of the Court that "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." 475 U.S. at 481, 106 S.Ct. at 1299. Plaintiff's effort to apply *Pembaur* to impose liability without demonstrating that the act of the officer was a result or manifestation of an underlying municipal policy amounts to little more than an impermissible attempt to employ a *respondeat superior* theory.

■ Neither *Tuttle* nor *Pembaur,* when properly applied, is dispositive of the liability arising from a single incident without reviewing the sufficiency of any accompanying claim that a policy was in operation. Defendants have adequately shown in their motion that Plaintiff has failed to allege the existence and operation of a municipal policy. Summary judgment would be appropriate under *Celotex,* unless Plaintiff comes forward with a showing of genuine issues of material fact.

Plaintiff's response contends that the municipal defendants' failure to adequately train the defendant officers constitutes a *Monell*-type policy for which the local government and its officials would be answerable under § 1983. In City of *Canton v. Harris,* —— U.S. ——, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412, 426 (1989), the Supreme Court held that "the inadequacy of police training may serve as a basis for § 1983 liability only where the failure to

train amounts to deliberate indifference to the rights of persons with whom the police come in contact." The Court further stated that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." At ——, 109 S.Ct. at 1205, 103 L.Ed.2d at 427.

Plaintiff first asserts that a failure to train is shown by a purported absence of disciplinary actions by the Troy Police Department against any of its officers for the use of excessive force. Plaintiff's support of this allegation is by reference to deposition testimony that lacks materiality and genuineness for the purposes at hand. The deposition testimony of Officer Lyczkowski is presented wherein he states that he was *not* disciplined for having *not* drawn his weapon on Plaintiff. Defendants have relied on the portions of Officer Lyczkowski's testimony where he indicates that he had drawn his weapon before entering the store, but returned it to his holster before giving chase to the Plaintiff. The question, if any, is the propriety of disciplinary action against Officer Lyczkowski for holstering his drawn gun. Even relying entirely on the deposition testimony supplied by the Plaintiff, an instance of an officer not being discipline for electing to *avoid* deadly force does not represent a material fact tending to show a policy of failing to discipline officers for the *use* of deadly force.

Plaintiff also points out that Sergeant Szuminski stated in deposition that he did not personally recall an instance of an officer being disciplined for the use of excessive force during his tenure with the Department. Plaintiff does not offer any supporting evidence of the veracity or authority of Sergeant Szuminski's recollection, nor does he point to any additional evidence or testimony that would support this position. Sergeant Szuminski's statement alone does not present a genuine issue that would preclude the entry of summary judgment.

Plaintiff next alleges that the defendant officers were inadequately trained in the use of deadly force. Plaintiff misconstrues the standards of *Celotex* and *Harris* when he bases this argument upon a claim that the record is devoid of proof that the officers involved were adequately trained. The burden is not upon the defendants at this stage to demonstrate that there was adequate training, but is upon the Plaintiff to come forward with genuine and material allegations, supported by probative evidence, that the training was so inadequate as to constitute a "deliberate indifference" in municipal policy.

Finally, Plaintiff alleges that a failure to train is to be found in the bald assertion that the deployment of officers at the scene of the incident was improper. Plaintiff does not offer any supporting evidence for this allegation, either in terms of how the deployment was improper or what manner of deployment would have been more appropriate in the circumstances. Unsupported speculation is not a genuine issue of material fact precluding the entry of summary judgment.

Summary judgment is appropriate where there are no genuine issues of material fact, and "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). *Tuttle* and *Pembaur* point out that, while a single incident is not sufficient alone to impose liability, a local government and its officials are answerable where that incident resulted from a *Monell*-type policy. *Harris* provides that such a policy may be found in a failure to train police personnel. To preclude the entry of summary judgment on defendants' showing, Plaintiff was obliged to present genuine issues of material fact tending to show an unconstitutional municipal policy underlying the single incident. For the reasons set forth above, Plaintiff has not met his burden. Summary judgment is granted, and all claims against Defendants City, Department, and Chief Carey brought pursuant to 42 U.S.C. § 1983 are dismissed.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment as to all pendant state law claims and all federal claims brought pursuant to 42 U.S.C. § 1983 for alleged violations of the Fourth and Fourteenth Amendments is GRANTED.